[Civ. No. 54225. Second Dist., Div. Five. May 14, 1979.]

In re the Marriage of BETTY and SALVADOR ANSARA CHALA.
BETTY CHALA, Respondent, v.
SALVADOR ANSARA CHALA, Appellant.

COUNSEL

Michael J. Movius for Appellant.

Anita H. Dymant for Respondent.

OPINION

HASTINGS, J.—Betty Chala (wife), respondent, and Salvador Ansara Chala (husband), appellant, were married for six years and three months. The minor child of wife, Heather, was adopted by husband during the course of the marriage. At the conclusion of the dissolution proceeding, wife was awarded as her half of the community property a 1966 Cadillac, valued at $200, miscellaneous household furniture and furnishings valued at $4,000, and cash of $10,186.50. Husband was awarded cash of $14,386.50. Husband was ordered to pay child support of $125 per month.

The community obligations of the parties totalled $19,971.10.[1] In connection with these obligations, the court made the following order: "Respondent [husband] is ordered to assume, pay and hold Petitioner [wife] harmless from 100% of the said community obligations. . . . Respondent [husband] is ordered to pay to Petitioner [wife] as and for

---

[1] These debts were a) Board of Equalization $3,378.29; b) Internal Revenue Service $7,732.84; c) Harry Clark $532.77; d) Chala Enterprises, Inc. $8,327.20. This last debt consisted primarily of advances made by husband's sons from their corporation to pay for gasoline purchases from Shell Oil for the Calabasas station in the amounts of $4,450 and $3,877.20 paid to Board of Equalization for delinquent sales taxes on the same station.

spousal support, a lump sum payment in the amount of $9,985.55, which shall satisfy any and all obligations of Respondent to Petitioner for spousal support, and neither party shall thereafter be entitled to any further or other award for spousal support."

Other facts will be set forth when pertinent to the issues on appeal.

■ 1. Husband's first issue on appeal is that the court abused its discretion in ordering him to pay child support in the amount of $125 per month. Evidence introduced at the trial showed that husband was 62 years of age and unemployed at that time. Husband had owned and operated the Calabasas Shell Station from 1972 through 1975, and was employed through December 1976 as a manager for Chala Enterprises, a corporation owned by his sons. He testified that he spends a portion of his time at his sons' service station in Hollywood, and that he occasionally helps out with the customers. He had applied for social security benefits approximately two weeks prior to the date of trial, and these benefits were expected to begin within one month. He resides with one of his sons who pays all of his expenses, and there is no charge to husband for rent. He testified that he suffers from high blood pressure.

He claims that these facts do not justify the $125 per month child support award. He concedes the liberal discretion given to the trial court in fixing child support (*In re Marriage of Muldrow,* 61 Cal.App.3d 327, 332 [132 Cal.Rptr. 48]), but he feels the court abused its discretion in considering his ability to pay. We disagree. The facts disclose that husband can be gainfully employed by his sons at their service station and he will receive social security benefits. The award is not so excessive or exorbitant as to be an abuse of discretion as a matter of law. There was sufficient evidence before the trial court to support its conclusion that husband's needs were being met, that he was able to work and he could afford the child support award.

2. Husband's second issue on appeal is more challenging. After dividing $28,773 (mostly cash) of community assets equally, the court found that there remained $19,971.10 in community liabilities. It then created a plan requiring husband to pay all of these liabilities, but labelled one-half of the payments to wife as spousal support. Wife seems to be satisfied with the order, but husband is not. He claims the order was merely a device to make him pay all of the community debts of the

parties, which is contrary to California's Family Law Act, Civil Code section 4800 et seq., and current California case law.

■ It is true that California decisional law has interpreted the California Family Act to mean that community property assets and community obligations must be divided equally when the community assets *exceed* the community obligations. (*In re Marriage of Fonstein,* 17 Cal.3d 738, 748 [131 Cal.Rptr. 873, 552 P.2d 1169]; *In re Marriage of Barnert,* 85 Cal.App.3d 413, 420-421 [149 Cal.Rptr. 616]; *In re Marriage of Smith,* 79 Cal.App.3d 725, 746, fn. 9 [145 Cal.Rptr. 205]; and *In re Marriage of Eastis,* 47 Cal.App.3d 459, 463 [120 Cal.Rptr. 861].) If, as husband claims, the form of the award was solely a means for subverting this now established law, we would agree that the court abused its discretion.

■ However, it is also correct in appropriate cases to include in spousal support orders a provision that the payments, or portions thereof, may be paid to third parties for overdue or future debts. In the very recent case of *In re Marriage of Epstein,* 24 Cal.3d 76, 85 [154 Cal.Rptr. 413, 592 P.2d 1165], the Supreme Court noted: " 'Payment of a debt, of course, may constitute payment of spousal or child support. (See *Gay* v. *Gay,* 146 Cal. 237, 243 [79 P. 885]; *Bushman* v. *Superior Court,* 33 Cal.App.3d 177, 181-183 [108 Cal.Rptr. 765]; *In re Hendricks,* 5 Cal.App.3d 793, 797-798 [85 Cal.Rptr. 220] . . .).' "

In our present case the debts (see fn. 1, *ante*) were past due obligations incurred by the community business. It appears that the key issue is whether these debts can be shifted to the husband in the form of spousal support when there were sufficient community liquid assets to pay them at the time that the marriage was dissolved. It therefore becomes necessary to review prior case law to determine, if possible, what kind of debts can be ordered paid as spousal support. In *Gay, supra,* the earliest case cited by the Supreme Court in *Epstein,* the court ordered husband to pay $300 to wife as a form of reimbursement for costs incurred by her in the past but after separation for support. The court said (at p. 243): "If it should appear to the court that it was necessary, in order to insure the support of the wife upon the amount to be paid to her periodically in the future, that existing wants or expenses incurred by her should be provided for, the court, within the qualification announced above, would have the right to do so." Later in the opinion, the court states that the lump sum payment of $300 was justified "in order that the respondent might be placed in a situation so that in the future she would be enabled

to live upon the allowance provided to be paid her." (*Id.,* at p. 243.) In *In re Hendricks, supra,* 5 Cal.App.3d at page 795, husband was ordered to pay wife as temporary alimony $300 per month, with the added proviso, " '[p]ursuant to the further stipulation of counsel, the court orders that defendant shall pay all community debts and obligations incurred prior to date of separation; . . .' " A contempt action was brought against the husband for failure to pay the community debts, and the husband argued that if found in contempt of court, he could be imprisoned for a debt in violation of California Constitution article I, section 15. The court concluded it was not such a debt, but was a valid spousal support order, stating at page 797: "The court may include an amount for the payment of past community debts so that the spouse seeking support 'might be placed in a situation so that in the future she would be enabled to live upon the allowance provided to be paid her.' (*Gay* v. *Gay* [supra], 146 Cal. 237, 243 [79 P. 885].)" In *Bushman, supra,* husband was ordered to pay mortgage payments on the residence as a portion of spousal support. Husband was cited for contempt for not making these payments and the court followed *Hendricks, supra,* in holding that these payments were a form of spousal support and that husband could be found in contempt for failure to pay.

In *In re Marriage of Epstein, supra,* 24 Cal.3d 76, the court considered the problem of reimbursing a spouse from the community who paid community debts after the separation. The opinion frowns upon payment of these debts by one spouse when community property is available for this purpose, unless the payments are directly related to spousal or child support. The court states: " '[W]hen after separation, one of the spouses makes payments on preexisting community debts out of earnings or other separate funds, if the no-reimbursement rule is applied, *the result is that community obligations which would otherwise be charged against community property and borne by the parties equally are charged exclusively to the paying spouse.* Thus, application of the no-reimbursement rule will discourage payment of community debts after separation, exacerbate the financial and emotional disruption which all too frequently accompanies the breakup of a marriage and, perhaps, result in impairing the credit reputations of both spouses.

" 'So, we are persuaded the rule disallowing reimbursement in the absence of an agreement for reimbursement should not apply and that, as a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution. . . .

" 'Likewise, reimbursement should not be ordered where the payment on account of a preexisting community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties.' " (*Id.,* at pp. 84, 85; italics added.)

The California Family Law Act, as interpreted by *Fonstein* and *Eastis* requiring equal division of the community property assets and obligations when the assets are greater than the debts, requires us to consider carefully orders that transfer more debts to one spouse as spousal support. Either by happenstance or design, there is a growing tendency on the part of the trial courts to use all or portions of spousal support awards for this purpose. What appears to be happening is that trial courts, reluctant to equalize the community property as required by *Fonstein* and *Eastis,* seek refuge by labelling an unauthorized differential as "spousal support."

An order of spousal support is for *future* living expenses of the supported spouse. Payment of continuing obligations to third parties related to such needs is clearly a form of spousal support, and in most situations the propriety of the award will be obvious; for example, if the wife is living in the home and the husband is not, an award that he pay $500 a month spousal support, payable $300 in cash to wife and $200 directly to the beneficiary of the home mortgage, is justifiable without a special finding. The same would be true in many other typical third-party payment orders. Then there is the situation recognized in *Gay, supra,* that past unpaid debts for living expenses can be ordered paid so that future payments of spousal support will not be depleted by creditors demanding payment of the spouse receiving the support award. Finally, we have *Epstein, supra,* that authorizes payments of such debts without reimbursement from the community if they "constituted in reality a discharge of the paying spouse's duty to support the other spouse."

In 1977 the Legislature, in Civil Code section 4801,[2] set the standards for the courts to follow in making spousal support orders. *In re Marriage of Morrison,* 20 Cal.3d 437, 442-454 [143 Cal.Rptr. 139, 573 P.2d 41],

[2]The pertinent provisions of section 4801, subdivision (a) are:

"(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties:

"(1) The earning capacity and needs of each spouse.

"(2) The obligations and assets, including the separate property, of each.

"(3) The duration of the marriage.

"(4) The ability of the supported spouse to engage in gainful employment without

addressed the issue of the length of the award. ██ It does not appear that the alleged support award in our present case followed these guidelines. It purported to be a one shot discharge of all spousal support obligations by paying 50 percent of all community debts. Assumption of these debts by husband, and delivery to wife of a hold-harmless agreement, terminated the spousal support. Such quick termination of spousal support may or may not have been appropriate under the circumstances. Wife testified she had been a secretary, but that her skills had become "very rusty." She intended to return to school to replenish these skills so that she could find employment. It is not unusual under these circumstances for the court to retain jurisdiction, at least for a longer period than it did here, to determine if she can become self-supporting. (*In re Marriage of Morrison, supra,* 20 Cal.3d 437, 453.) We realize this was not a long marriage, and a lump sum award may be sufficient; but here there seems to be no relationship of the award to the wife's future needs, the husband's ability to pay the debts, or to other standards listed in section 4801. In the long run, it might not benefit wife at all. The creditors of the community debts are not bound by the husband's agreement, and if he does not pay the debts, there is a very good chance that these creditors will turn to wife for payment.

We conclude that under the facts of this case, the court's order was not a correct award of spousal support. It does not meet the standards established by *Gay, Epstein, Morrison,* and section 4801, *supra.* The result was an unequal division of the community property. We are sure the court was trying to be fair with both parties, but we believe the law as cited narrows the discretion that the court now has in ordering debts paid in the form of spousal support. It should have first ordered the debts paid from the community cash on hand, and divided the balance remaining equally. The court should then have considered the issue of spousal support using the guidelines of section 4801, *Morrison,* and any other appropriate case law.

The order of child support is affirmed. The order of spousal support is reversed. Both parties to pay their own costs on appeal.

Kaus, P. J., and Ashby, J., concurred.

interfering with the interests of dependent children in the custody of the spouse.
"(5) The time required for the supported spouse to acquire appropriate education, training, and employment.
"(6) The age and health of the parties.
"(7) The standard of living of the parties.
"(8) Any other factors which it deems just and equitable."