[No. B078373. Second Dist., Div. Seven. June 29, 1994.]

In re the Marriage of ABRAHAM and ANNETTE BENJAMINS.
ABRAHAM BENJAMINS, Appellant, v.
ANNETTE BENJAMINS et al., Respondents.

426

COUNSEL

David L. Sharp for Appellant.

Stephen A. Kolodny and Carole R. Azran for Respondents.

OPINION

JOHNSON, J.—In this appeal we are asked to decide whether a supporting spouse must continue to pay a supported spouse's medical insurance premium after the supported spouse's death, pursuant to a marital settlement agreement which limits the parties' right to modify its terms. We answer the question in the negative and reverse the order of the trial court which denied reimbursement of amounts paid for medical insurance covering periods after

the supported spouse's death. We also reverse an award of attorney fees and costs the trial court imposed against the supporting spouse as a sanction for filing the motion for reimbursement.

## FACTS AND PROCEEDINGS BELOW

Appellant, Abraham Benjamins, and Annette Benjamins separated in July 1983, after a 10-year marriage. The marriage was terminated as to status in February 1987. Eventually the parties entered into a marital settlement agreement which resolved the remaining issues between them. On August 30, 1990, the terms of the settlement agreement were read into the record in open court. This agreement was accepted by the court as the final judgment on January 17, 1991.

Paragraphs 5 through 17 of the agreement provide for equalizing payments, security for these payments and spousal support payments in progressively descending amounts as the equalizing payments are made. Appellant was to pay Annette $1.5 million in three equal payments of $500,000. These payments were due March 1, 1991, March 1, 1992, and September 1, 1993. In addition, appellant was to pay Annette $9,000 per month as spousal support until the first payment was made, $6,000 per month after the first payment and $4,000 per month after the second payment. After the final equalizing payment appellant's obligation for spousal support would terminate.

Paragraph 19 of the agreement required appellant to pay Annette's medical insurance premiums. That provision provides: "Petitioner is ordered to pay the Respondent the sum of Nine Thousand Eight Hundred Fifty-five Dollars ($9,855.00) on or before December 1, 1990 and the additional sum of Thirteen Thousand One Hundred Forty Dollars ($13,140.00) on or before September 1, 1991. Upon payment of the aforementioned sums, which relate to the Respondent's medical insurance premiums, the Petitioner shall have no further liability or obligation for the Respondent's medical insurance."

Paragraph 40 of the agreement is the nonmodification clause. This provision states: "The Court finds that the parties agreed, and the Court orders, that there shall be no modification of the terms, covenants and provisions of this Judgment of Dissolution, except pursuant to a writing subsequently executed by the parties."

Appellant paid the $9,855 due December 1, 1990. This payment covered three quarters of Annette's medical insurance premiums, or from December 1, 1990, through August 30, 1991, when the next annual payment would be due.

Annette died on April 11, 1991.[1] Respondent did not dispute appellant's obligation for spousal support payments terminated by operation of law upon Annette's death. (Civ. Code, § 4801, subd. (b) [now Fam. Code, § 4337].) After her death respondent withdrew a lien against appellant's real property which provided security for future spousal support payments.

In view of her death, appellant refused to make the $13,140 payment due September 1, 1991, for the annual premium for Annette's medical insurance. In response, respondent threatened to foreclose on remaining liens on appellant's real property imposed as security for the equalizing payments. Appellant ultimately paid the $13,140 and sought reimbursement in the trial court.

Appellant filed a noticed motion for reimbursement of the advance payment of $3,285 for the quarterly medical insurance premium covering June 1, 1991, through August 30, 1991, as well as for the $13,140 payment which was to cover the following year. Respondent opposed the motion. She claimed appellant's obligation to pay these amounts was clear and unequivocal and, based on the agreement's nonmodification clause, appellant was not entitled to relief. Respondent also requested appellant be sanctioned for bringing a frivolous motion.

The trial court adopted respondent's argument the settlement agreement was nonmodifiable and denied appellant's request for reimbursement. The trial court also found appellant's motion was "frivolous" and imposed sanctions of $2,500 against appellant payable to counsel for respondent.

Appellant challenges the court's ruling and award of sanctions.

## DISCUSSION

I. *Appellant's Obligation to Pay Annette's Medical Insurance Premiums Terminated by Operation of Law on Her Death.*

 . Respondent acknowledges appellant's spousal support obligations terminated by operation of law upon Annette's death. (Civ. Code, § 4801, subd. (b) [now Fam. Code, § 4337].) However, she contends appellant's obligation to pay the specified amounts for Annette's medical insurance premiums was not similarly extinguished because this obligation did not constitute spousal support. Consequently, she argues, appellant is bound to pay this amount, and may not terminate his obligation, because the parties

---

[1]Prior to her death Annette assigned all her rights and interest in the marital settlement agreement to her daughter Simone Friedman. To avoid confusion, this opinion will refer to Annette's assignee as "respondent."

agreed the terms of the agreement could not be modified except by a writing. Appellant counters, because health insurance for a supported spouse is in the nature of spousal support, it should similarly terminate upon the supported spouse's death. We find appellant's argument persuasive.

Unless a more specific statute otherwise provides, agreements between spouses are construed under the statutory rules governing the interpretation of contracts generally. (Civ. Code, § 1635; *In re Marriage of Garrity and Bishton* (1986) 181 Cal.App.3d 675, 683 [226 Cal.Rptr. 485]; *Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 724 [143 Cal.Rptr. 826]; 2 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1993) ¶ 9.86, p. 9-25.) Thus, "[t]he interpretation of the effect of a judgment is a question of law within the ambit of the appellate court." (*John Siebel Associates* v. *Keele* (1986) 188 Cal.App.3d 560, 565 [233 Cal.Rptr. 231].)

Civil Code section 4801, subdivision (b) (now Fam. Code, § 4337) provides: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the *support and maintenance* of the other party shall terminate upon the death of either party or the remarriage of the other party." (Italics added.)

"Support" is broadly defined as "a source or means of living; subsistence, sustenance, or living. In a broad sense the term includes all such means of living as would enable one to live in the degree of comfort suitable and becoming to his station of life. It is said to include anything requisite to housing, feeding, clothing, *health*, proper recreation, vacation, traveling expense, or other proper cognate purposes; also, *proper care, nursing, and medical attendance in sickness*, and suitable burial at death." (Black's Law Dict. (5th ed. 1979) p. 1291, col. 1, italics added.)

The term "maintenance" similarly involves expansive concepts of means to cover numerous types of living expenses, including health care: "The furnishing by one person to another, for his support, of the means of living, or food, clothing, shelter, etc., particularly where the legal relation of the parties is such that one is bound to support the other, as between father and child, or husband and wife. . . . Term 'maintenance' means primarily food, clothing and shelter, but it does include such items as reasonable and necessary transportation or automobile expenses, *medical and drug expenses*, utilities and household expenses." (Black's Law Dict., *supra*, p. 859, col. 2, italics added.)

Thus, "support" and "maintenance" are merely general terms used to describe a wide variety of various types of assistance designed to cover everyday living expenses, including medical care.

 In our view the issue whether payment of medical insurance premiums constitutes spousal support is not a close one. Its purpose is to guarantee proper health care to facilitate a healthy and productive life. Medical insurance coverage generally ensures a person will have access to the care necessary to maintain his or her physical well being. In illness, proper medical coverage provides the means to improve the quality of one's life or to enable one to live in relative comfort. Medical insurance also ensures a person will have access to adequate and immediate treatment in the event of accidents or other medical emergencies. Next to food, clothing and shelter, the necessity for proper medical care is at least as much a fundamental requisite of everyday living as is transportation or education.

We consequently conclude payment of medical insurance premiums to provide for proper health care for a supported spouse necessarily is in the nature of spousal support. (See also 1 Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 6:143.2, p. 6-238 [order to pay medical insurance properly part of spousal support order].)

In the context of this case, payment of the medical insurance premiums constituted an important part of the support Annette received in order to guarantee proper medical care. At the time the parties entered into the stipulated agreement Annette was already gravely ill and in serious need of continued medical coverage. Thus, appellant's payment of Annette's medical insurance premiums ensured she would not have to use funds designated for daily living expenses to pay for her medical coverage.

Earlier decisions have construed payments for items far less personal than health care, and far less obvious a type of payment designed to ensure the life and comfort of the supported spouse, as additional spousal support. For example, "support" and "maintenance" can encompass such items as mortgage payments on the family residence, whether paid to the supported spouse or directly to the mortgagee. (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 85-86 [154 Cal.Rptr. 413, 592 P.2d 1165]; *In re Marriage of Garcia* (1990) 224 Cal.App.3d 885 [274 Cal.Rptr. 194].) Similarly, maintenance of life insurance on the supporting spouse's life may constitute a valid spousal support substitute. (See, e.g., *In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565 [10 Cal.Rptr.2d 334].) Or, an order directing payment of the supported spouse's attorney fees has also been considered a form of spousal support where the award is based on the recipient's need. (*In re Gwinn* (Bankr. 9th Cir. 1982) 20 Bankr. 233.)[2]

Significantly, orders to pay overdue community debts, or to pay the supported spouse's future debts, have also been held to be a form of spousal

---

[2]The designation of certain payments as "spousal support" in marital settlement agreements may have implications for personal income tax purposes or for purposes of dischargeability in

support. (See *Gay* v. *Gay* (1905) 146 Cal. 237, 243 [79 P. 885]; *In re Marriage of Chala* (1979) 92 Cal.App.3d 996 [155 Cal.Rptr. 605]; cf. *In re Marriage of Marx* (1979) 97 Cal.App.3d 552 [159 Cal.Rptr. 215].) The rationale behind these rulings is to ensure an award will be adequate to meet the supported spouse's living expense and not be depleted by creditor demands. (*In re Marriage of Chala, supra,* 92 Cal.App.3d at p. 1001.)

The medical insurance premium payments in this case have all the indicia of payments in the nature of spousal support. First, the payments were designed to pay Annette's future anticipated medical expenses. In addition, the agreement required appellant to pay the medical insurance premiums during the periods before full payment of the equalizing payments and while Annette received spousal support payments. Thus, it appears the purpose of the timing and duration of the payments was to enable Annette to pay her current living expenses without fear of losing her health insurance coverage in the event her expenses exceeded her income during this period. The procedure of ordering payment of a supported spouse's medical insurance premiums in conjunction with, and for the same period as orders for spousal support payments, is apparently a common practice in fashioning overall spousal support awards. (See, e.g., *In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464, 468-469 [194 Cal.Rptr. 237]; *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1229 [225 Cal.Rptr. 234]; *In re Marriage of Wilson* (1988) 201 Cal.App.3d 913, 915 [247 Cal.Rptr. 522].)

Finally, the very nature of health care insurance compels the conclusion payment of medical insurance premiums constituted a form of spousal support. As noted, health care is designed to improve the quality of the recipient's life and promote the person's health and well being. And, in circumstances such as those present in this case, health care can be as critical and basic a necessity of life as food, shelter and clothing.

In sum, we conclude payment of a supported spouse's medical insurance premium is in the nature of spousal support for purposes of determining

bankruptcy. However, in this case we are not concerned with whether the obligation for medical insurance premiums should be taxable to the supporting or supported spouse or whether or not the obligation should be discharged in bankruptcy. In any event we note, even in these contexts the parties' designation of payments under a marital settlement agreement do not necessarily control their ultimate characterization. For example, if an obligation can properly be construed as being for support, or in the nature of support, it is a nondischargeable debt. (See 11 U.S.C. § 523(a)(5); *Shaver* v. *Shaver* (9th Cir. 1984) 736 F.2d 1314; *Smalley* v. *Smalley* (1959) 176 Cal.App.2d 374 [1 Cal.Rptr. 440, 74 A.L.R.2d 756]; 1 Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶ 6.120.1, p. 6-212.)

In the present appeal we need only determine whether the payments for medical insurance premiums are a form of additional spousal support and, if so, whether the obligation for such payments terminated at the supported spouse's death by operation of Civil Code section 4801, subdivision (b) (now Fam. Code, § 4337).

whether that obligation ends as a matter of law on the supported spouse's death.

As noted, Civil Code section 4801, subdivision (b) (now Fam. Code, § 4337) provides an obligation for support and maintenance terminates upon the death of the supported spouse unless otherwise agreed to by the parties. The parties' agreement in the case at bar did not provide spousal support payments were to continue notwithstanding the death of either party. For this reason, respondent did not contest appellant's obligation for spousal support payments was extinguished upon Annette's death.

Because we hold payment of Annette's medical insurance premiums was also part of the spousal support award in this case, appellant's obligation for those payments terminated upon her death by operation of law as well. (Civ. Code, § 4801, subd. (b) [now Fam. Code, § 4337]; *Hilton v. McNitt* (1957) 49 Cal.2d 79, 82 [315 P.2d 1] [unless agreement expressly provides supported spouse was to receive payments without regard to the parties' death or remarriage, support obligations ceased at the obligor's death].)[3]

■ Nevertheless, respondent argues relieving appellant of his obligation to pay the amounts otherwise designated for Annette's medical insurance premiums would constitute a modification of the agreement in violation of the clause specifying the agreement could not be modified except by a writing.

---

[3]Alternatively, we note appellant would be absolved of this obligation in any event under ordinary contract principles. "A settlement agreement is in the nature of a contract and is therefore governed by the same legal principles applicable to contracts generally." (*In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1180 [280 Cal.Rptr. 919].)

The purpose of paragraph 19 of the marital settlement agreement was to provide medical insurance coverage for Annette for a specified time. However, her untimely death frustrated the purpose of this provision. Obviously health care coverage can only benefit the living. After death Annette had no further use for medical treatment and was arguably uninsurable at that point in any event. Consequently, payments for the purchase of medical insurance premiums for Annette after her death were, if not impossible, impracticable.

Thus, under general contract principles, appellant's obligation to perform under the contract would be discharged due to impossibility, impracticability and frustration of purpose. Performance under a contract is excused "[w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." (Rest.2d Contracts, § 261; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 772 et seq., p. 697 et seq. and cases cited.)

As noted, nothing in the settlement agreement specified payments for Annette's medical insurance premiums were to continue after her death. Consequently, under general principles of contract law appellant's obligation under this provision of the contract would be excused due to impossibility and frustration of purpose.

Civil Code section 4811, subdivision (b) (now Fam. Code, § 3591) provides spousal support is modifiable "except to the extent that any written agreement . . . specifically provides to the contrary." Termination and modification are distinct concepts describing different ways to alter support obligations. In this case, appellant did not seek to modify his obligation to pay Annette's medical insurance premiums. Instead he sought a finding his obligation to purchase medical insurance for Annette terminated by operation of law at her death.[4]

Although not cited by respondent, we are aware of authority which could be construed as blurring the distinction between modification, revocation and termination of spousal support by treating the terms interchangeably. (*In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 152 [134 Cal.Rptr. 891] [termination nothing more than modification to zero]; *In re Marriage of Bennett* (1983) 144 Cal.App.3d 1022, 1026 [193 Cal.Rptr. 113] [same].) However we believe doing so interjects unnecessary ambiguity and confusion into an area of law already fraught with problems.

Moreover, the Legislature has indicated an intent to treat modification and termination of spousal support separately. Each is governed by different statutes and the purpose and outcome of each statutory objective is vastly different. (Civ. Code, § 4801, subd. (b) [now Fam. Code, § 4337]; Civ. Code, § 4811, subd. (b) [now Fam. Code, §§ 3590, 3591]; see also *In re Marriage of Glasser* (1986) 181 Cal.App.3d 149, 152 [226 Cal.Rptr. 229] ["To say that a termination due to [death] is nothing more than a modification flies in the face of the clear legislative intent: . . ."].) We consequently reject an interpretation of "modification" which would make it synonymous with "termination." We believe such an interpretation would be in conflict with the controlling statutes and contrary to good policy.

In sum, appellant's obligation to pay Annette's medical insurance premiums terminated by operation of law upon her death. Accordingly, appellant is entitled to reimbursement for medical insurance premiums paid for periods after her death.

---

[4]Query whether the nonmodification clause in the marital settlement agreement in the case at bar would have been sufficient to prevent modification in any event. In *In re Marriage of Hufford* (1984) 152 Cal.App.3d 825 [199 Cal.Rptr. 726] we held a virtually identically worded clause was inadequate to invoke the exception to the statutory rule. (*Id.* at p. 834.) We found the language used only prevented the parties from modifying the contract but imposed no restriction on a court's ability to do so. (*Id.* at p. 835; see also *In re Marriage of Sherman* (1984) 162 Cal.App.3d 1132, 1137 [208 Cal.Rptr. 832] [specification of support payments over designated term aided by "boiler plate" provisions making agreement nonmodifiable generally inadequate to satisfy statutory exception to court's power to modify spousal support award]; see also 3 Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 17.29, p. 17-22; 2 Adams & Sevitch, Cal. Family Law Practice (8th ed. 1993) § N.100.10 et seq., p. N-60 et seq.)

## II. *The Award of Sanctions Must Be Reversed.*

██ Respondent opposed appellant's motion for reimbursement. In her opposition papers respondent requested the court to impose sanctions against appellant under Civil Code section 4370.6 (now Fam. Code, § 271) for bringing a frivolous motion. The court denied appellant's request for reimbursement and ordered appellant to pay $2,500 to respondent's counsel as a sanction for bringing what the court deemed a "frivolous" motion.

Civil Code section 4370.6 provides in pertinent part: "(a) Notwithstanding Sections 4370 and 4370.5, the court may base an award of attorneys' fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and abilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden upon the party against whom the sanction is imposed. In order to obtain an award under this section the party requesting an award of attorneys' fees and costs is not required to demonstrate any financial need for the award. . . ."

██ "[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.] '[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. . . .' " (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769 [209 Cal.Rptr. 354, 691 P.2d 1020].)

██ There is no evidence indicating the award was based on financial need. (Cf. *In re Marriage of Hublou* (1991) 231 Cal.App.3d 956, 964 [282 Cal.Rptr. 695] [where the award is based primarily on the merits or demerits of a particular litigation approach, the financial circumstances of the parties must be considered nonetheless].) Instead, the transcript in the present case indicates the trial court imposed sanctions based strictly on its view appellant's motion was "frivolous."

However, based on our conclusions it is clear appellant's motion was neither frivolous nor without merit. The agreement did not expressly provide payments for Annette's medical insurance premiums were to continue despite her death in the interim. Thus, nothing in the contract compelled these

payments after her death. Nor did appellant seek to modify the agreement's terms. Instead he claimed his obligation terminated by operation of law at Annette's death.

Based on this analysis of the law appellant sought reimbursement for payments he made but which could no longer be used for their intended purpose. The merit of appellant's argument should have been apparent because there was no express language in the agreement providing payment of Annette's medical insurance premiums were to continue despite her death.

The record does not indicate the trial court relied on any alternative rationale to support the sanction award. Thus, because of the obvious merit of appellant's request, we conclude the trial court abused its discretion in imposing sanctions against him on the basis his motion was frivolous. Accordingly, we reverse the award of $2,500 imposed against appellant in this case.

## DISPOSITION

The order appealed from is reversed with directions to grant appellant's motion for reimbursement for medical insurance premiums paid for periods after Annette's death. The order imposing sanctions against appellant in the amount of $2,500 is also reversed. Appellant is awarded his costs on appeal.[5]

Lillie, P. J., and Woods (Fred), J., concurred.

---

[5]Appellant requests this court to impose sanctions against respondent for opposing his motion for reimbursement. In support of his request he cites various statutory provisions which authorize a court to award attorney fees reasonably necessary to maintain or defend any proceeding subsequent to the judgment. (Civ. Code, §§ 4370, subd. (a) [now Fam. Code, § 2030], 5120.160, subd. (b) [now Fam. Code, § 916].) However, the record before this court is inadequate to determine whether and to what extent an award would be warranted. We therefore decline appellant's request.

We similarly reject respondent's request sanctions be imposed against appellant for filing a frivolous appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]; Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) For the reasons stated in the opinion, appellant's appeal clearly was not frivolous.