885 So.2d 488 (2004)
Jami S. WAGNER, n/k/a Jami S. Washburn, Appellant/Former Wife,
v.
Thomas H. WAGNER, Appellee/Former Husband.
No. 1D04-57.
District Court of Appeal of Florida, First District.
November 5, 2004.
*489 Tracy S. Carlin and Rebecca Bowen Creed of Mills & Carlin, P.A., Jacksonville, for Appellant/Former Wife.
Michael T. Webster, Shalimar, for Appellee/Former Husband.
WEBSTER, J.
Appellant (the former wife) seeks review of a non-final order granting appellee's (the former husband's) "Motion for Temporary Relief," by which the former husband sought to terminate his spousal support obligation and reduce his child support obligation. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const.; Fla. R.App. P. 9.130(a)(3)(C)(iii). To determine whether the trial court's rulings were correct, we must look to the parties' marital settlement agreement. Our examination of the pertinent provisions of that document satisfies us that, notwithstanding the parties' arguments to the contrary, both in the trial court and here, those provisions are patently ambiguous. The trial court did not hold an evidentiary hearing or make findings regarding the meaning of the ambiguous language. We cannot perform those responsibilities on appeal. Accordingly, because we cannot determine on the present record whether the trial court's rulings were correct, we must reverse and remand for such proceedings.

I.
The parties, who have two minor children, were divorced in California in 1999. The California court's judgment incorporates the parties' marital settlement agreement, and directs that spousal and child support be paid as set forth in the agreement. The pertinent provisions for our purposes are found in section 4.01 of the parties' agreement, which is titled "Family Support":
Husband shall pay to Wife family support. Family support shall all be deductible from taxable income by Husband, and included in taxable income by Wife. Husband shall pay [W]ife $35,000 *490 per year family support based on his gross annual pay of $70,000.... This $35,000 is to be distributed to [W]ife as follows: $1900 each month ($950 on the 1st of each month and $950 on the 15th of each month), $5400 due in the month of October upon [H]usband receiving his Air Force bonus, and the remaining $6200 Husband will pay Wife on or before April 15th of the following year. Any additional income [H]usband earns, including all bonuses and moonlighting income, Husband shall pay [W]ife a total of 42% of his gross, distributed as follows: within 14 days of [H]usband receiving income Husband shall pay to [W]ife 31% of the gross, and [H]usband shall pay Wife the additional 11% on or before April 15th of the following year. If Husband earns more than $113,000, Wife shall receive no family support on the increment Husband earns above $113,000 per year.
Family support at this rate shall remain in effect until June 30, 1999. Commencing on July 1, 1999, Husband agrees to pay Wife $2850 monthly (to be paid $1425 on the 1st and 15th of the month) as family support. Husband agrees to pay an additional $2000 family support to Wife on October 31, 1999 and October 31, 2000. Husband shall also pay to Wife an additional $4200 in family support on or before April 1, 2000 and $4200 on or before April 1, 2001. Family support at this rate shall terminate on August 15, 2001. On August 16, 2001, Husband agrees to pay [W]ife family support at the rate of thirty percent of his gross income with a cap on the gross income subject to the 30 percent assessment for family support. The cap shall be $150,000 of gross income including all bonuses and non-taxable income. Husband shall pay Wife family support at this rate bi-monthly until August 15, 2004. On August 16, 2004, Husband shall begin paying to Wife family support at the rate of 25 percent of his gross income including bonuses and non-taxable income up to a cap of $250,000 of gross income.
Husband shall pay family support in bi-monthly payments until August 15, 2015 [which is three days before the younger child's eighteenth birthday], or until his death. Family support shall terminate upon death of Wife or August 15, 2015, whichever is sooner. Family support shall not be subject to modification as to amount or duration based upon parental time shared with the parties' children. The parties agree that family support shall not be subject to modification based upon the earned income of Wife unless Wife's earned income exceeds $50,000 per year. Either party may apply for modification of family support based upon inflation, standard cost of living, changes in the value of the American dollar, or any extreme medical condition of the parties' children.
Family support and spousal support is [sic] non-modifiable as to duration, with the exception of the death of either party or remarriage of Wife. The termination date for family support and spousal support of August 15, 2015 is absolute and is not modifiable under any circumstances. Spousal support and/or family support may not be request [sic] for any period after August 15, 2015, nor will any court have jurisdiction to order spousal support and/or family support to be paid for any period after August 15, 2015, regardless of any circumstances that may arise and regardless of whether any motion to modify family support and/or spousal support is filed before, on or after August 15, 2015. Accordingly, in no event, and under no circumstances shall Husband be obligated to pay *491 spousal support and/or family support on or after August 15, 2015....
Also relevant is section 6.20, which provides that, except as otherwise specified in the agreement, "th[e] agreement shall be governed by and construed in accordance with the laws of the State of California."
The parties and their children eventually all found their way to Florida, where, in November 2002, the former husband filed a "Petition to Domesticate California Decree and Modify Same." In that petition, the former husband alleged that all of the parties resided in Okaloosa County; that, by virtue of the settlement agreement which had been made a part of the California judgment, he was "obligated to pay `family support' to the Former Wife in the current amount of $45,000.00 per year"; that such "`family support' [wa]s clearly support for the Former Wife and children of the parties"; that, "[u]nder the terms of the Marital Settlement Agreement, the parties contemplated the amount of `family support' would be modifiable upon the remarriage of the Former Wife"; that, because the former wife had remarried, "the Former Husband should have no further continuing obligation to pay any form of spousal support whatsoever to the Former Wife"; and that, while he acknowledged his continuing obligation to pay child support, the amount should be established by reference to Florida's child support guidelines. The petition requested that the trial court domesticate the California judgment; modify that judgment "by terminating the portion of `family support' which is truly spousal support to the Former Wife"; and direct him "to pay only support for the minor children of the parties in an amount to be established utilizing Florida Child Support Guidelines." The former wife filed an answer and affirmative defenses, in which she took the position that the settlement agreement spoke for itself, and denied allegations of the petition which were inconsistent with the agreement; pointed out that the agreement provided it was to be governed and construed according to California law; claimed that, pursuant to the settlement agreement, the former husband had waived his right to seek modification on the grounds alleged in his petition; and "denie[d] that Former Husband's support obligation should be modified and ... that Florida Child Support Guidelines [we]re applicable."
In the trial court, both parties argued that their settlement agreement was unambiguous. The former husband argued that no spousal support order had ever been entered; that, even had there been a spousal support order, pursuant to California law, the obligation to pay spousal support terminates by operation of law upon the receiving spouse's remarriage unless the parties have agreed otherwise in writing, which was not the case here; that, pursuant to California law, a family support order is treated the same as a child support order; that, pursuant to the Uniform Interstate Family Support Act (UIFSA) (ch. 88, Fla.Stat.(2002)), the trial court had jurisdiction to domesticate the California judgment and to modify the amount of family support; and that, pursuant to UIFSA, the trial court was obliged to apply the Florida child support guidelines in ruling on the motion to modify. The former wife took the position that California law controlled as to all questions because of the choice of law provision in the settlement agreement; that neither a spousal support nor a child support order was involved, as those terms are understood pursuant to California law; that, pursuant to California law, family support includes both spousal support and child support, but that the respective amounts are unallocated; and that the trial court could not terminate spousal support or modify child support. Adopting the former husband's *492 reasoning, the trial court eventually ruled that the former husband's obligation to pay spousal support terminated automatically upon the former wife's remarriage and that, based upon the Florida child support guidelines, the former husband's sole remaining financial obligation to the former wife consisted of monthly child support in the amount of $2,621.00. This appeal follows.

II.
As all connected with this case have apparently recognized, its outcome depends upon the previously cited language of section 4.01 of the parties' settlement agreement. Although the parties have consistently argued that the pertinent language of that section is unambiguous, we reach the opposite conclusion. It seems to us that the language is patently ambiguous in several respects.
Pursuant to either Florida or California law, a settlement agreement of the type involved here, entered into voluntarily after full disclosure and then ratified by a court, is a contract, subject to interpretation like any other contract. E.g., Zern v. Zern, 737 So.2d 631, 633 (Fla. 1st DCA 1999); In re Marriage of Benjamins, 26 Cal.App.4th 423, 31 Cal.Rptr.2d 313, 315 (1994). If the terms are clear and unambiguous, their interpretation presents a question of law for determination by the court. E.g., Rothstein v. Honeywell, Inc., 519 So.2d 1020, 1021 (Fla. 3d DCA 1987); City of El Cajon v. El Cajon Police Officers' Ass'n, 49 Cal.App.4th 64, 56 Cal.Rptr.2d 723, 727 (1996). Similarly, whether an ambiguity exists in a contract is a question of law. E.g., Centennial Mortgage, Inc. v. SG/SC, Ltd., 772 So.2d 564, 565-66 (Fla. 1st DCA 2000); Wolf v. Superior Court, 114 Cal.App.4th 1343, 8 Cal.Rptr.3d 649, 656 (2004). However, when an ambiguity exists and the parties' intent can be resolved only by resort to conflicting extrinsic evidence, a question of fact is presented, which must be resolved by the trier of fact. E.g., Centennial Mortgage, 772 So.2d at 566; Wolf, 8 Cal.Rptr.3d at 662. Because whether an ambiguity exists in the settlement agreement presents a question of law, our standard of review is de novo. E.g., Centennial Mortgage, 772 So.2d at 566.
Section 4.01 of the parties' agreement is titled "Family Support." California law defines "family support" as "an agreement between the parents, or an order or judgment, that combines child support and spousal support without designating the amount to be paid for child support and the amount to be paid for spousal support." Cal. Fam.Code § 92 (West 2004). It is a hybrid support obligation which permits the parties to take maximum advantage of favorable tax provisions. Id. § 4066. It is relatively clear from the language of section 4.01 that the parties intended the term "family support" to have the definition ascribed to it pursuant to California law. However, once that hurdle is overcome, things become far less clear.
Although California law provides that "family support" includes both spousal and child support, the parties' agreement is silent regarding the portions of the family support that are to be allocated to spousal and child support, respectively. Pursuant to California law, spousal support normally terminates by operation of law upon the death of either party or the remarriage of the receiving party; however, the parties may agree otherwise, provided their agreement is in writing. Id. § 4337. The parties' agreement is unclear as to whether they contemplated that the spousal support component of the family support would terminate automatically upon the former wife's remarriage. The first two sentences of the fourth paragraph of section *493 4.01 are, in our opinion, irreconcilable. The first reads, "Family support and spousal support is [sic] non-modifiable as to duration, with the exception of the death of either party or remarriage of Wife." However, the second sentence appears to contradict the first. It says, "The termination date for family support and spousal support of August 15, 2015 is absolute and is not modifiable under any circumstances." While the first sentence might be read as suggesting that the spousal support portion of the payment may be terminated upon the former wife's remarriage, the second sentence seems to indicate that remarriage is to have no impact upon the obligation to continue to pay that portion of the family support. Further support for the latter interpretation is found in paragraph three of section 4.01, the second sentence of which states that "[f]amily support shall terminate upon death of Wife or August 15, 2015, whichever is sooner." To all of this confusion is added the fact that the parties did not state what portions of the family support payment were to be allocated to spousal and child support, respectively.
Problems also exist regarding the child support component. In addition to the failure to identify the portion of the family support payment attributable to child support, the agreement is unclear regarding what events will permit one of the parties to request a modification in the amount to be paid. While it does state that "[e]ither party may apply for modification of family support based upon inflation, standard cost of living, changes in the value of the American dollar, or any extreme medical condition of the parties' children," it does not expressly limit the circumstances that will justify a request for modification to those specified. The former husband neither alleged nor proved the occurrence of any of the specified circumstances. Accordingly, to the extent the parties' intent was to limit the circumstances to those specified, it would appear the trial court should have denied the former husband's request to modify the amount of child support.

III.
Because the parties disagree as to the intent of their agreement in these ambiguous areas, the trial court should have taken evidence regarding that intent. Because it did not, we are unable to determine whether its ultimate rulings were correct. Accordingly, we must reverse and remand. On remand, the trial court should schedule an evidentiary hearing. The first issue it should resolve is whether the parties intended that the spousal support component of the family support payment would terminate upon the former wife's remarriage. If it determines they did, it may again enter an order to that effect. However, if it determines that the parties did not, it must deny the former husband's request to terminate spousal support.
The second issue the trial court must resolve is what portions of the family support payment the parties intended to allocate to spousal and child support, respectively. See County of Orange v. Anderson, 2004 WL 1701156, at *9 (Cal.Ct.App. July 30, 2004) (holding that, when the spousal support portion of family support terminates because of remarriage, the trial court must take evidence to determine the proper allocation between spousal support and child support). If the trial court concludes that the parties intended spousal support would terminate upon the former wife's remarriage, its order should terminate only that portion of family support it finds to be attributable to spousal support. If it finds that such was not the parties' intent, it shall leave the spousal support component undisturbed. However, in either case, it must next determine what *494 events the parties intended would justify a request to modify the amount of support paid, and whether such an event occurred. If it finds that no such event occurred, it must deny the former husband's request to modify the child support component of family support. If it finds that such an event did occur, it should then proceed to the merits of the former husband's request.
On the merits of the request to modify the child support component, we are satisfied that, notwithstanding the choice-of-law provision in the parties' agreement, the appropriate substantive law is that of Florida. See § 88.6131, Fla. Stat. (2002) (a part of UIFSA stating that, when the parties reside in Florida and the child does not reside in the issuing state (i.e., California), the trial court may modify the issuing state's child support order, applying "the procedural and substantive law of this state"); In re Marriage of Crosby & Grooms, 116 Cal.App.4th 201, 10 Cal.Rptr.3d 146 (2004) (holding that, notwithstanding a provision in the parties' marital settlement agreement that Idaho law would control, because the parties and their children had since moved from Idaho, the trial court was obliged by UIFSA, public policy and general choice-of-law principles to apply California substantive law  as the law of the forum state  to a request for modification of the amount of child support). Because the parties and their children now all live in Florida, it is the only state having a legitimate interest in this dispute. Accordingly, should the trial court conclude that a modification is appropriate, it should determine the amount by reference to the Florida child support guidelines.
The order granting the former husband's "Motion for Temporary Relief" is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
WOLF, C.J., and BARFIELD, J., Concur.