[No. B008997. Second Dist., Div. Five. May 19, 1986.]

In re the Marriage of SHARON and MICHAEL GLASSER.
SHARON GLASSER, Appellant, v.
MICHAEL GLASSER, Respondent.

**Counsel**

Gary K. Olsen for Appellant.

Freeman & Freeman and Steven M. Freeman for Respondent.

**Opinion**

**ASHBY, Acting P. J.**—Appellant Sharon Glasser (Wife) appeals from a motion granted in favor of respondent Michael Glasser (Husband) to quash a writ of execution. Husband was paying Wife spousal support pursuant to a provision of the settlement agreement which was integrated with the interlocutory judgment of dissolution of their marriage. The provision provided for support payments of $1,500 per month beginning October 1, 1982, and terminating September 30, 1985. The spousal support was to be "non-

modifiable for any reason whatsoever." Jurisdiction for support was to continue beyond September 30, 1985, if Wife was disabled on that date so that she could seek additional support. Jurisdiction was not to continue for any other reason.

Wife remarried on March 13, 1983. Husband stopped paying support on September 1, 1983. Wife obtained a writ of execution for $3,750 on November 29, 1983. Husband's motion to quash the writ was granted by the trial court based on its reading of the agreement in light of the requirements of Civil Code section 4801, subdivision (b). We agree with the trial court's interpretation of the agreement and affirm the judgment.

Civil Code section 4801, subdivision (b), states: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party." Unless the parties agree in writing that support payments are to continue despite the wife's remarriage, such payments cease by operation of law. (*Hilton* v. *McNitt* (1957) 49 Cal.2d 79 [315 P.2d 1]; *Stokes* v. *Stokes* (1971) 14 Cal.App.3d 470 [92 Cal.Rptr. 468]; both cases interpreting former Civ. Code, § 139.)

Wife contends that the spousal support provision is not subject to termination by operation of section 4801, subdivision (b). The pertinent language of the support provision is: "Spousal support shall be non-modifiable for any reason whatsoever." Wife also emphasizes the prefatory language which shows the agreement to be the final, permanent and irrevocable settlement of their support rights, and a statement establishing the non-modifiability of the agreement in general. Wife argues that this language manifests an intent to continue the support after her remarriage. But language showing intent not to modify the agreement does not establish that the parties intended that Wife would continue to be supported after she married. A husband's obligation to his former wife ends by operation of law when she marries another. If the parties intend that support is to be "non-terminable for any reason whatsoever," they must say so in their agreement. No particular words are required. (*Rheuban* v. *Rheuban* (1965) 238 Cal.App.2d 552, 557 [47 Cal.Rptr. 884].) On the other hand, silence will not do. (*In re Marriage of Wright* (1976) 54 Cal.App.3d 1115, 1120 [126 Cal.Rptr. 894].) Language stating that the support is not modifiable also will not do.

Wife relies on two cases in which the intent to continue support after remarriage was found in the settlement agreement even though the intent was not clearly stated: *Rheuban* v. *Rheuban, supra,* 238 Cal.App.2d 552, and *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192 [114 Cal.Rptr.

56]. In each of these cases the court relied heavily on the fact that the property settlement agreement was "integrated" in concluding that the parties intended continued support.[1] (*Rheuban* v. *Rheuban, supra,* 238 Cal.App.2d at p. 553; *In re Marriage of Nicolaides, supra,* 39 Cal.App.3d at p. 200.) ▮ The import of integrated agreements has been eliminated by the Legislature. "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. . . ." (Civ. Code, § 4811, subd. (b). See *In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 464, fn. 2 [204 Cal.Rptr. 568, 683 P.2d 248].) The analysis followed in *Rheuban* and *Nicolaides,* in which the agreement is scrutinized to find intent that spousal support was part of the consideration for the transfer of property, is no longer appropriate to answer the question of whether the parties "otherwise agreed" under section 4801, subdivision (b), preventing termination of support due to remarriage.

▮ Wife further contends that the support is not modifiable pursuant to Civil Code section 4811, subdivision (b), which provides that spousal support is generally modifiable "except to the extent that any written agreement . . . provides to the contrary." Husband does not seek to modify, i.e., change the terms of the support; the language of section 4811, subdivision (b), relating to modification has no application to this case. As stated by Justice Kaus in *In re Marriage of Wright, supra,* 54 Cal.App.3d at page 1120, the "purpose of section 4811, subdivision (b),—and companion section 4801 . . .—was to define clearly the law-imposed obligations of the parties, and to establish under what circumstances and in what manner the parties may deviate from those obligations." (Fn. omitted.) To say that a termination due to remarriage is nothing more than a modification flies in the face of the clear legislative intent: Termination of support due to remarriage is governed by section 4801, subdivision (b); modification of support is governed by section 4811, subdivision (b). The language quoted from *In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 152 [134 Cal.Rptr. 891], whereby the court deemed termination "nothing more than a 'modification' to zero" was specifically confined to the context of the case, and we decline to adopt it. Similarly, *In re Marriage of Bennett* (1983) 144 Cal.App.3d 1022 [193 Cal.Rptr. 113], prevented a former husband from seeking to end his support obligations by circumventing the settlement agreement. The court likened the *Bennett* case to the *Harris* case and adopted the *Harris* reasoning. (*Id.,* at p. 1026.) Both former husbands in those cases sought to end their obligations through narrow definitions of the terms

---

[1] "An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property." (*Plumer* v. *Plumer* (1957) 48 Cal.2d 820, 824 [313 P.2d 549].)

"modification" and "termination." In this case Wife seeks to continue support by broadly defining those terms. Neither case controls the matter before us.[2]

■ Wife attempts to have extrinsic evidence considered on the issue of intent. She contends that Husband's payment of support during the almost six months following her remarriage is strong evidence of their intent at the time of signing the agreement that support would not terminate if she remarried. She argues in addition that her support should not have been terminated by the court on a motion by Husband, but she should have been given the evidentiary hearing that she requested. As stated in *Emanuel* v. *Emanuel* (1975) 50 Cal.App.3d 56, 59 [123 Cal.Rptr. 249], no evidence of intent is permissible without some language in the agreement reasonably subject to interpretation as a declaration of an intent that support continue beyond wife's remarriage in compliance with Civil Code section 4801. (See also *Steele* v. *Langmuir* (1976) 65 Cal.App.3d 459, 463 [135 Cal.Rptr. 426] (where agreement provided that support would terminate upon death, evidence was required to determine whose death was meant).)

■ Wife attempts to distinguish *Stokes* v. *Stokes, supra,* 14 Cal.App.3d 470, but it is precisely in point with this case. Though the seminal case, *Hilton* v. *McNitt, supra,* 49 Cal.2d 79, concerned the death rather than the remarriage of a party, the holding of the case has application herein: If the parties do not agree otherwise in writing, the support terminates by operation of law upon the occurrence of either of the two contingencies in the statute, i.e., death of either party or remarriage of the supported party.

The judgment is affirmed.

Hastings, J., and Eagleson, J., concurred.

---

[2]Wife also relies on cases involving Civil Code section 4801.5 (presumption of decreased need and modification of support payment of party cohabiting with person of opposite sex), but those cases have no application herein and will not be discussed.