131 Cal.Rptr.2d 436 (2003)
106 Cal.App.4th 1267
In re the MARRIAGE OF Glenda and Edward CESNALIS.
Glenda Hill Cesnalis, Respondent,
v.
Edward John Cesnalis, Appellant.
No. C040828.
Court of Appeal, Third District.
March 12, 2003.
As Modified on Denial of Rehearing April 7, 2003.
Review Denied June 18, 2003.
*437 Lampi, Gephart & Silverman, Randall L. Gephart, Mammoth Lakes, and Claudia Silverman, San Francisco, for Appellant.
Law Offices of Charles E. Schneider and Charles E. Schneider, Rancho Cucamonga, for Respondent.
DAVIS, Acting P.J.
This appeal arises from the trial court's postjudgment order denying the motion of appellant Edward John Cesnalis (Edward) to terminate spousal support. The court found that Edward and his former wife, Glenda Hill Cesnalis (Glenda), had agreed in writing that Glenda's remarriage would not terminate her spousal support, and therefore Edward had waived his rights under Family Code section 4337 (section 4337). Under section 4337, spousal support terminates by law upon the supported spouse's remarriage unless the parties have agreed otherwise in writing. The trial court also found that Edward's removal of language from the relevant written agreement  at Glenda's insistence  that would have expressly terminated spousal support upon her remarriage estopped him from claiming that her remarriage terminated support.
We uphold the trial court's findings that Edward waived section 4337 regarding remarriage, and that Edward was estopped from claiming that spousal support ended when Glenda remarried; accordingly, we affirm.

BACKGROUND
Edward and Glenda were married on November 30, 1992. A little over seven years later, they separated and Glenda filed for divorce. Edward's counsel drafted a stipulated judgment for dissolution of marriage (Stipulated Judgment). Shortly thereafter, the two parties and their attorneys met to discuss the draft.
At this meeting, Glenda demanded that paragraph 4 of the Stipulated Judgment, pertaining to spousal support (Paragraph 4), be modified. As originally drafted, Paragraph 4 stated in relevant part: "4. SPOUSAL SUPPORT. Husband shall pay spousal support in the amount of $4,000.00 per month, . . . beginning October 1, 2000, and continuing until either party's death, the remarriage of Wife, or September 30, 2003, whichever occurs first, at which point spousal support will terminate absolutely. The duration of *438 spousal support will not be modifiable under any circumstances, and the termination date stated herein is absolute, and no court shall have jurisdiction over the issue of spousal support, regardless of whether any motion is made on, before or after September 30, 2003. The parties stipulate that the marriage was one of short duration, and otherwise have bargained carefully for the termination of support contained herein."
Glenda insisted that the words "the remarriage of Wife" be removed from the list of terminating events in Paragraph 4.
Edward removed the remarriage language. Edward also added other language reiterating the three-year duration of support and moved the starting and ending dates of support back a month. Paragraph 4 now stated in relevant part: "4. SPOUSAL SUPPORT. Husband shall pay spousal support in the amount of $4,000.00 per month for a period of three years, . . . beginning November 1, 2000, and continuing until either party's death, or October 30, 2003, whichever occurs first, at which point spousal support will terminate absolutely. The duration of spousal support will not be modifiable under any circumstances, and the termination date stated herein is absolute, and no court shall have jurisdiction over the issue of spousal support, regardless of whether any motion is made on, before or after October 30, 2003. The parties stipulate that the marriage was one of short duration, and otherwise have bargained carefully for the termination of support contained herein." (Italics added.)
The parties then agreed to the Stipulated Judgment with this redrafted Paragraph 4, and the court entered the judgment on October 25, 2000.
Glenda remarried on August 6, 2001. Upon learning of Glenda's remarriage, Edward moved unsuccessfully to terminate spousal support. This appeal ensued.

DISCUSSION
There are two issues on appeal. First, did the trial court properly find that the parties agreed in writing that Glenda's remarriage would not terminate spousal support, and therefore that Edward had waived section 4337? Second, did the trial court properly find that Edward was estopped from claiming that Glenda's remarriage terminated spousal support? We find that the trial court ruled correctly as to both issues and will affirm the order.

1. Written Waiver of Section 4337
Section 4337 states: "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party." The issue here is whether Paragraph 4 evidences an agreement between the parties to waive section 4337.
Two prominent, relatively recent decisions set forth the basic principles governing how a written agreement may waive the remarriage termination provision of section 4337: In re Marriage of Glasser (1986) 181 Cal.App.3d 149, 226 Cal.Rptr. 229 (Glasser) (construing section 4337's substantively identical predecessor, Civil Code section 4801, subd. (b)); and In re Marriage of Thornton (2002) 95 Cal. App.4th 251, 115 Cal.Rptr.2d 380 (Thornton). Those principles are as follows.
No particular words are required to waive section 4337 and make spousal support continue upon remarriage, but silence will not do. (Glasser, supra, 181 Cal.App.3d at p. 151, 226 Cal.Rptr. 229; see also Thornton, supra, 95 Cal. App.4th at p. 254, 115 Cal.Rptr.2d 380.) There must be a written agreement on the issue or the subject. (See Glasser, supra, 181 Cal.App.3d at pp. 151-153, 226 Cal. Rptr. 229; Thornton, supra, 95 Cal. App.4th at p. 254,115 Cal.Rptr.2d 380; see *439 also In re Marriage of Sherman (1984) 162 Cal.App.3d 1132, 1137, 208 Cal.Rptr. 832 (Sherman).)
Section 4337's remarriage termination is not waived simply because the written agreement fails to include remarriage among the terminating events that are expressly mentioned. (Thornton, supra, 95 Cal.App.4th at p. 257, 115 Cal. Rptr.2d 380.)
Nor is section 4337 overcome if the written agreement simply makes the spousal support provision "nonmodifiable" in general. (Glasser, supra, 181 Cal. App.3d at p. 151, 226 Cal.Rptr. 229; Thornton, supra, 95 Cal.App.4th at p. 254, 115 Cal.Rptr.2d 380.) This is because "termination" and "modification" are distinct concepts describing different ways to alter a support obligation. (Thornton, supra, 95 Cal.App.4th at p. 254, 115 Cal. Rptr.2d 380; In re Marriage of Benjamins (1994) 26 Cal.App.4th 423, 433, 31 Cal.Rptr.2d 313.)
Thornton provides that a written agreement to waive section 4337's terminating provisions must be "specific and express." (Thornton, supra, 95 Cal. App.4th at p. 254, 115 Cal.Rptr.2d 380.) Nevertheless, as noted, no particular words are required, and extrinsic evidence is admissible to resolve whether a written agreement has waived the section 4337 remarriage termination provision. (Thornton, supra, 95 Cal.App.4th at p. 254, 115 Cal.Rptr.2d 380; Glasser, supra, 181 Cal.App.3d at p. 153, 226 Cal.Rptr. 229; see also Emanuel v. Emanuel (1975) 50 Cal.App.3d 56, 59, 123 Cal.Rptr. 249 (Emanuel); Steele v. Langmuir (1976) 65 Cal. App.3d 459, 462-463, 135 Cal.Rptr. 426 (Steele); Sherman, supra, 162 Cal.App.3d at pp. 1137-1138, 208 Cal.Rptr. 832; Lucas v. Elliott (1992) 3 Cal.App.4th 888, 893-894, 4 Cal.Rptr.2d 746 (Lucas).) Before such extrinsic evidence is properly admitted, however, there must be language in the written agreement reasonably susceptible to interpretation as a declaration of an intent that support continue beyond remarriage. (Glasser, supra, 181 Cal. App.3d at p. 153, 226 Cal.Rptr. 229; Emanuel, supra, 50 Cal.App.3d at p. 59, 123 Cal.Rptr. 249; Steele, supra, 65 Cal. App.3d at p. 463, 135 Cal.Rptr. 426; Sherman, supra, 162 Cal.App.3d at pp. 1137-1138, 208 Cal.Rptr. 832.)
The party seeking to overcome a section 4337 remarriage termination bears the burden of proving, by clear and convincing evidence, the requisite written agreement. (Thornton, supra, 95 Cal. App.4th at p. 257, 115 Cal.Rptr.2d 380.)
In applying these principles, the decisions display a dichotomy. On one side are those decisions, such as Glasser and Thornton, that do not find their written agreements susceptible to the admission of extrinsic evidence or sufficient to waive section 4337; on the other side are those decisions that do, such as Steele and Sherman. The written agreements in Glasser and Thornton stated, in boilerplate fashion, that spousal support payments were to be made over a designated term, and added, generally, that spousal support was non-modifiable. (Glasser, supra, 181 Cal. App.3d at pp. 150-151, 226 Cal.Rptr. 229; Thornton, supra, 95 Cal.App.4th at p. 253, 115 Cal.Rptr.2d 380.) The agreements in Steele and Sherman, while they contained similar boilerplate, were more tailored in critical ways. In Steele, the agreement provided that spousal support would continue until death, remarriage or the expiration of 20 years, and was "to be deemed non-modifiable, regardless of any change of circumstances, except for the contingencies contained herein." (Steele, supra, 65 Cal.App.3d at pp. 461-62, 135 Cal.Rptr. 426.) And in Sherman, the agreement stated that "the amount of support, the method of payment and the terms and conditions of termination of support, all as [previously specified], shall not be modifiable by the parties or by any court on any ground." (Sherman, supra, 162 Cal.App.3d at p. 1135, 208 Cal.Rptr. 832, italics omitted.) As we shall explain, the written *440 agreement here comes down on the Steele and Sherman side of things.[1]
Paragraph 4 of the Stipulated Judgment is the relevant written agreement here. It is more specific than the spousal support agreements in Glasser and Thornton. The specificity is centered on the duration of support and the limited circumstances that can end it. Under the wording of Paragraph 4, Edward "shall pay spousal support . . . for a period of three years . . . beginning November 1, 2000, and continuing until either party's death, or October 30, 2003, whichever occurs first, at which point spousal support will terminate absolutely." For good measure, Paragraph 4 adds that "[t]he duration of spousal support will not be modifiable under any circumstances, and the termination date stated herein is absolute[.]"
In applying the previously stated principles on how a written agreement may waive section 4337, we find the following with respect to Paragraph 4. The paragraph does not specifically mention remarriage. But it does say that the only way spousal support can end before the three-year duration elapses is if one of the parties dies. Paragraph 4 reiterates that the three-year duration cannot be changed under any other circumstances; it is no stretch to say that a supported spouse's remarriage would generally be considered one of the most prominent of such circumstances. Viewed in this light, Paragraph 4 cannot be said to be altogether silent on remarriage as a terminating event.
The spousal support provisions here, as in Glasser, Thornton, Steele and Sherman, all mention non-modifiability. However, the non-modifiability provisions in Glasser and Thornton are broad and apply to the spousal support provisions generally. The non-modifiability provision of Paragraph 4, by contrast, is expressly limited to the three-year "duration of spousal support" which "will not be modifiable under any circumstances" and which will end only if the three years are up or one of the parties dies. (Italics added.) This is similar to the more tailored non-modifiability provision in Steele. (Steele, supra, 65 Cal. App.3d at pp. 462, 465-66, 135 Cal.Rptr. 426 [husband's support obligation was nonmodifiable "regardless of any change of circumstances, except for the contingencies" specified].) With this focus on a definitive three-year duration, the "non-modifiability" provision in Paragraph 4, in contrast to such provisions in Glasser and Thornton, relates more to termination than to modification.
On the issue of extrinsic evidence, the preceding analysis of Paragraph 4's language demonstrates that the paragraph is reasonably susceptible to interpretation as a declaration of an intent that support continue beyond remarriage. Because of this reasonable susceptibility, the trial court properly admitted extrinsic evidence on the meaning of Paragraph 4 regarding *441 remarriage. (Glasser, supra, 181 Cal. App.3d at p. 153, 226 Cal.Rptr. 229; Steele, supra, 65 Cal.App.3d at pp. 462-63, 135 Cal.Rptr. 426; Sherman, supra, 162 Cal. App.3d at pp. 1137-1138, 208 Cal.Rptr. 832.) The issue here regarding the admissibility of extrinsic evidence resembles the one before the court in Steele, supra, 65 Cal.App.3d 459, 135 Cal.Rptr. 426. In Steele, the written support agreement stated in part that husband's support of wife would "continue until the death, remarriage, or expiration of twenty (20) years. . . ." (Id. at pp. 461-462, 135 Cal. Rptr. 426.) The appellate court concluded that extrinsic evidence was properly admissible to show this provision meant only the wife's death or remarriage; this was because the placement of the ambiguous term "death" next to the term "remarriage" reasonably suggested this meaning. (Id. at pp. 462-63, 135 Cal.Rptr. 426.)
The extrinsic evidence admitted here showed the following. As originally drafted by Edward's counsel, Paragraph 4 specified that Glenda's remarriage ("the remarriage of Wife") would terminate spousal support. Glenda refused to agree to the Stipulated Judgment unless this language was removed from Paragraph 4. Edward removed the language and Glenda signed the Stipulated Judgment. Another significant distinction between the two drafts of Paragraph 4 is that the redrafted Paragraph 4 reiterated, in clear terms, that Edward would pay spousal support "for a period of three years."
There is a conflict in the record as to what was said after Glenda demanded that the remarriage language be removed from Paragraph 4. Edward asserts in a declaration that after Glenda made this demand, his counsel stated that the removal would have no legal effect "because spousal support terminates upon remarriage, regardless of whether the agreement so states." According to Edward's declaration, Glenda's counsel then stated, "`that may be correct, but [Glenda] wants it out anyway,' or words to that effect." Glenda's counsel maintains in a declaration, however, that he never expressly or impliedly agreed that the removal of the remarriage language would have no legal effect. Glenda's counsel declared, "Notwithstanding declarations by any other persons, at no time did I assent to, or even imply assent to, the notion that spousal support would terminate on remarriage or for any other reason." Glenda's counsel added, "I made it clear throughout settlement negotiations that the spousal support payment was set in stone"; "[r]emarriage is a change of circumstances [and] the [Stipulated Judgment] says [spousal] support is not modifiable under any circumstances. Period." (Italics in original.)
The trial court pointed out that had Glenda and her counsel believed that removing the remarriage language from Paragraph 4 would have no legal effect, it would have been nonsensical to bargain for it. Based on its analysis, the trial court chose to discount Edward's account.
The trial court was free to make the credibility calls on the conflicting evidence. The trial court reasonably determined that Glenda would not agree to the Stipulated Judgment if the remarriage termination language was not removed, and that the removal of that language from Paragraph 4, in light of the language that remained, was clear and convincing evidence that the parties had agreed in writing that Glenda's remarriage would not terminate spousal support. Consequently, substantial evidence supports the trial court's determination that Edward waived section 4337's remarriage termination provision.
One final note on section 4337. Thornton does state at one point: "If the parties wish to make a written agreement to waive the remarriage provision of section 4337, they must at a minimum expressly state that the supported spouse's remarriage will not terminate spousal support." (Thornton, supra, 95 Cal.App.4th at p. 257, 115 Cal.Rptr.2d 380, italics added.)
*442 We believe this statement goes beyond the requirements of section 4337. Taken literally, this statement would mean that particular words are required to waive section 4337, and that extrinsic evidence has no relevance in resolving whether a written agreement has waived the section 4337 remarriage provision. Section 4337 does not go so far as to require a written agreement expressly stating that the supported spouse's remarriage will not terminate spousal support. (See Steele, supra, 65 Cal.App.3d at pp. 465-466, 135 Cal.Rptr. 426.) As evidenced by this case, as well as by other decisions including Steele, Sherman, and Lucas, parties can "otherwise agree[ ] . . . in writing" to waive a section 4337 termination provision without such an express statement. (§ 4337.)
We conclude the record supports the trial court's finding that the parties had agreed in writing that Glenda's remarriage would not terminate spousal support, and therefore Edward had waived section 4337.

2. Estoppel
The trial court also found that Edward was estopped from claiming that Glenda's remarriage terminated spousal support. We conclude the evidence is sufficient to support this finding as well.
The record shows that Glenda insisted that Edward remove the words "the remarriage of Wife" from Paragraph 4 as an event terminating spousal support, or she would not agree to the Stipulated Judgment. Edward removed the challenged phrase to obtain Glenda's agreement. Edward also added language to the redrafted Paragraph 4 reiterating his obligation to pay spousal support "for a period of three years." Finally, Glenda settled for what she believed was less than her share of certain assets in signing the Stipulated Judgment with the redrafted Paragraph 4.
"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid.Code, § 623.) Substantial evidence shows that Edward deliberately led Glenda to believe that her remarriage would not terminate her spousal support by acceding to her demand that he remove her remarriage as a terminating event in Paragraph 4, knowing that she would not otherwise sign the Stipulated Judgment. Based on Edward's removal of the remarriage language, Glenda signed the Stipulated Judgment believing that her remarriage would not terminate her spousal support. Glenda reasonably and detrimentally relied upon the removal of the remarriage language, and upon the addition of the more definitive language pertaining to duration. (Lange v. TIG Ins. Co. (1998) 68 Cal.App.4th 1179, 1185, 81 Cal.Rptr.2d 39.)
Thus, the record supports the trial court's finding that Glenda met her burden of establishing estoppel. (See Thornton, supra, 95 Cal.App.4th at pp. 254-255, 115 Cal.Rptr.2d 380.) Substantial evidence supports the finding that Edward was estopped from claiming that spousal support terminated upon Glenda's remarriage. (Evid.Code, § 623.)

DISPOSITION
The order is affirmed.
We concur: RAYE and CALLAHAN, JJ.
NOTES
[1] As noted above, we refer to Steele and Sherman only with respect to the specific wording of their spousal support provisions. We realize that these two cases also involved the now outdated concept of integrating spousal support and property division provisions rather than having spousal support provisions remain independent. (See Glasser, supra, 181 Cal.App.3d at pp. 151-152, 226 Cal.Rptr. 229; In re Marriage of Nicolaides (1974) 39 Cal. App.3d 192, 114 Cal.Rptr. 56; Rheuban v. Rheuban (1965) 238 Cal.App.2d 552, 47 Cal. Rptr. 884.) The integration concept is irrelevant here.

"Moreover, as we explain, the process by which Edward and Glenda drafted Paragraph 4 involved some unique facts on the issue of remarriage. These facts distinguish this case from the general concerns regarding the clarity required for retaining spousal support jurisdiction expressed in In re Marriage of Vomacka (1984) 36 Cal.3d 459, 204 Cal.Rptr. 568, 683 P.2d 248. This is not a Vomacka case.