**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CAROL A. JOHANSON; ALFRED F.
MELZIG, JR.,

　　　　　*Petitioners-Appellants,*

　　　　　v.

COMMISSIONER OF INTERNAL
REVENUE,

　　　　　*Respondent-Appellee.*

No. 06-75623

Tax Ct. No.
2490-05

OPINION

Appeal from a Decision of the
United States Tax Court

Submitted August 15, 2008*
San Francisco, California

Filed September 3, 2008

Before: Diarmuid F. O'Scannlain and Barry G. Silverman,
Circuit Judges, and James K. Singleton,**
Senior District Judge.

Opinion by Judge Silverman

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

## COUNSEL

Marjorie A. O'Connell, O'Connell & Associates, Washington, D.C., for the petitioners-appellants.

Regina S. Moriarty, United States Department of Justice, Tax Division, Washington, D.C., for the respondent-appellee.

---

## OPINION

SILVERMAN, Circuit Judge:

Spousal support payments made pursuant to a divorce settlement agreement are deemed to be "alimony" — and therefore income to the recipient and deductible by the payor — if, among other things, the payments are to terminate on the death of the payee spouse. In the present case, the marital settlement agreement did not expressly state what would happen to the payments in the event of the payee's death. We hold today that the Tax Court correctly looked to state law to determine whether or not the payments would survive the payee's death. Under California Family Code section 4337, spousal support terminates on the death of either spouse unless the parties expressly agree in writing to the contrary. The Tax Court held that the payments in this case are alimony because the payee failed to clearly and convincingly establish, as required by California law, that the payments would continue past her death. We affirm.

## I.   FACTS

In 1996, Carol A. Johanson and John Weiler divorced in California after nearly thirty years of marriage. Johanson and Weiler executed a "Marital Settlement Agreement" that obligated Weiler to make monthly "spousal support" payments of $5,250 to Johanson until October 31, 2010. With respect to these payments, the Agreement explicitly provides:

### IV.   SPOUSAL SUPPORT

\* \* \*

26. Both parties are aware that this marriage is one considered and characterized as a marriage of long duration. As a result, certain responsibilities for support may exist between the parties for some unknown length of time after separation and after a dissolution is entered unless both parties freely and voluntarily waive their rights to support and agree to the termination of the courts [sic] jurisdiction over the issue of spousal support. Once this waiver and agreement is entered, it is non-reversible and may work a considerable hardship on either one or both of the parties.

26. [sic] Being aware of the above, the court will retain jurisdiction over John's right to collect spousal support from Carol until May 31, 2011 at which time his right to collect such support shall permanently terminate. This termination date is absolute and non-modifiable under any circumstances.

27. Being aware of the above, John agrees to pay spousal support to Carol in the amount of $5,250.00 per month beginning the first month following the sale of the residence (close of escrow). Spousal support shall be due, one-half on the first of each and every month and one-half on the 15th of each and every month. Spousal support shall continue at this amount through October 31, 2010 at which time Carol's right to collect spousal support from John will permanently terminate. This termination date is absolute and non-modifiable under any circumstances . . . .

28. The duration of spousal support is non-modifiable and the court will not have jurisdiction to modify the length of time John will pay spousal support to Carol. Specifically, the court does not have jurisdiction to award any spousal support payable

from John to Carol for any period beyond October 31, 2010, regardless of the circumstances that may arise and regardless of whether any motion to modify spousal support is filed before, on or after October 31, 2010. The court also does not have jurisdiction to modify the amount of spousal support payable from John to Carol except for two circumstances, John's death, prolonged unemployment or John's disability. Upon John's death, spousal support will terminate permanently. Upon John's prolonged unemployment, the court has the jurisdiction to lower the amount of support for the length of the unemployment provided appropriate efforts are being made by John to find employment. Upon John's disability, the court has the jurisdiction to lower the amount of support for the length of the disability. Disability is defined as the inability to pursue an occupation because of physical or mental impairment. If such a modification is sought by John and ordered by the court, the court may increase or decrease the amount of support as the circumstances warrant but under no circumstances does the court have the jurisdiction or the authority to raise spousal support over the amount of $5,250.00 per month.

In 2002, Weiler paid Johanson $63,000 pursuant to the spousal support provision of the Agreement. Johanson filed her 2002 tax return jointly with her new husband and did not include the $63,000 in spousal support payments as part of their gross income. On November 10, 2004, the IRS notified Johanson of a tax deficiency of $20,475 and a penalty of $4,095. The IRS explained that the $63,000 Johanson received from Weiler constitutes alimony and as such is includible in taxable gross income. Somewhere along the way, the IRS decided not to pursue the penalty.

In considering Johanson's petition for redetermination of deficiency, the United States Tax Court held that the spousal

support payments satisfy the definition of alimony in section 71(b)(1) of the Internal Revenue Code because Weiler is not obligated to continue the spousal support payments for any time after the death of Johanson, the payee spouse. In so holding, the Tax Court relied on California Family Code section 4337, which provides as follows:

> Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party.

The Tax Court also rejected Johanson's arguments that the payments were part of a property settlement or an overall lump-sum obligation.

We have jurisdiction to review Johanson's timely appeal of the Tax Court's decision. *See* 26 U.S.C. § 7482(a)(1).

## II.   ANALYSIS

We "review decisions of the Tax Court under the same standards as civil bench trials in the district court. Therefore, conclusions of law are reviewed de novo, and questions of fact are reviewed for clear error." *Milenbach v. Comm'r*, 318 F.3d 924, 930 (9th Cir. 2003) (internal citation omitted). "The interpretation and meaning of contract provisions are questions of law reviewed de novo." *Id.*

[1] The Internal Revenue Code requires that "alimony or separate maintenance payments" be included in taxable gross income. *See* 26 U.S.C. § 71(a). The Code provides a four-part definition of "alimony or separate maintenance payments":

> (1)   In general.—The term "alimony or separate maintenance payment" means any payment in cash if—

(A)   such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B)   the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C)   in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D)   there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

*Id.* § 71(b)(1). Subsection (D), the only part of this definition at issue in this appeal, thus requires that for payments to be deemed alimony, there must be no liability to continue payments after the death of the payee spouse. *See id.* § 71(b)(1)(D). Otherwise, the payments are deemed a disguised property division, neither taxable to the payee nor deductible by the payor. A support agreement that does not explicitly provide that payments terminate upon the death of the payee spouse can nevertheless satisfy § 71(b)(1)(D) if the payments terminate in the event of the payee spouse's death by operation of state law. *See Kean v. Comm'r*, 407 F.3d 186, 191 (3d Cir. 2005); *Lovejoy v. Comm'r*, 293 F.3d 1208, 1210 (10th Cir. 2002); *Barrett v. United States*, 74 F.3d 661, 664 (5th Cir. 1996); *Hoover v. Comm'r*, 102 F.3d 842, 846-48

(6th Cir. 1996); *Zinsmeister v. Comm'r*, 80 T.C.M. (CCH) 774 (2000); *see also* I.R.S. Notice 87-9, 1987-1 C.B. 421. Where "state family law is ambiguous as to the termination of payments upon the death of the payee, a federal court will not engage in complex, subjective inquiries under state law; rather the court will read the divorce instrument and make its own determination based on the language of the document." *Hoover*, 102 F.3d at 846; *see also Kean*, 407 F.3d at 191 (declining to delve into the "intricacies" of state family law). In this case, state family law is unambiguous as to the termination of payments upon the death of the payee, so we need not make an independent determination.

**[2]** Here, the Agreement does not explicitly provide whether Weiler's liability to make monthly payments to Johanson continues after her death. Under California law, "[e]xcept as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party." Cal. Fam. Code § 4337. A written agreement to waive section 4337 "must be specific and express." *In re Marriage of Thornton*, 115 Cal. Rptr. 2d 380, 383 (Ct. App. 2002).[1] While "[n]o particular words are required . . . silence will not do." *Id.* (quoting *In re Marriage of Glasser*, 226 Cal. Rptr. 229, 230 (Ct. App. 1986)). Mere failure to include death as a terminating event does not constitute waiver of section 4337. *Id.* at 385.

**[3]** However, where there is "language in the written agreement reasonably susceptible to interpretation as a declaration of an intent that support continue beyond [death]," extrinsic evidence is admissible in order to determine whether the writ-

---

[1]Although *Thornton* involved the remarriage provision of § 4337, we follow California cases that have indicated that the death and remarriage provisions of section 4337 should be interpreted in a similar fashion. *See, e.g.*, *In re Marriage of Cesnalis*, 131 Cal. Rptr. 2d 436, 439 (Ct. App. 2003).

ten agreement waived section 4337. *In re Marriage of Cesnalis*, 131 Cal. Rptr. 2d 436, 439-40 (Ct. App. 2003) (finding a non-modification statement "expressly limited to the . . . '*duration* of spousal support' " to warrant such analysis of extrinsic evidence). In *Cesnalis*, the question was whether spousal support payments would continue in the event of the payee spouse's remarriage. *Id.* at 438. Similar to the language in the *Cesnalis* agreement, the agreement here contains specific non-modification statements related to the duration of the spousal support payments that are "reasonably susceptible to interpretation" as an agreement to continue payments after Johanson's death. *See id.* at 439-40. Therefore, extrinsic evidence was admissible on the question of whether the parties waived the statutory termination of spousal support on the payee's death. *See id.* at 439.

Under California law, Johanson "bears the burden of proving, by clear and convincing evidence" that there is a written agreement to continue the spousal support payments beyond Johanson's death. *Id.* The Tax Court did not clearly err in holding that the extrinsic evidence proffered by Johanson failed to meet this standard. That language explicitly providing for the termination of the spousal support payments at "the death of either party" was deleted from a prior version of the Agreement does not clearly and convincingly establish that the parties agreed in writing that the payments to Johanson would continue past her death. That the parties obtained life insurance on Weiler's life to secure the spousal support payments does not shed any light on what the parties agreed to in the event of Johanson's death. The fact that Weiler continues to pay spousal support after Johanson remarried does not constitute a written agreement regarding the status of payments in the event of Johanson's *death*.

**[4]** The Tax Court did not clearly err in ruling that Johanson failed to prove by clear and convincing evidence that she and Weiler agreed in writing that the spousal support payments would continue past her death. Consequently, Weiler's

payments to Johanson were correctly found to be alimony, and therefore, taxable to Johanson.[2]

The decision of the Tax Court is AFFIRMED.

---

[2]We do not address Johanson's estoppel argument raised in her reply brief because the Tax Court did not consider it, Johanson did not raise it in her opening brief, and the Commissioner did not discuss the issue. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).