T.C. Memo. 2014-22

UNITED STATES TAX COURT

BRADLEY W. WIGNALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2085-12.

Filed January 28, 2014.

<u>Gary P. Compa</u> and <u>Douglas Chiapuzio</u>, for petitioner.

<u>Nhi T. Luu</u> and <u>Kimberly T. Packer</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>: Respondent determined a $5,882[1] deficiency in and a

$1,176 accuracy-related penalty under section 6662(a)[2] with respect to petitioner's

---

[1]All monetary amounts are rounded to the nearest dollar.

[2]All section references are to the Internal Revenue Code in effect for 2008, and all Rule references are to the Tax Court Rules of Practice and Procedure,

(continued...)

[*2] Federal income tax for 2008. We must decide two issues. The first issue is whether petitioner is entitled to deduct support payments he made to his former spouse as alimony. We hold that he is. The second issue is whether petitioner is liable for an accuracy-related penalty. We hold that he is not.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122, and the facts are so found. The stipulation of facts and its accompanying exhibits are incorporated by this reference. Petitioner resided in Oregon when he filed the petition.

Petitioner married Marci Lee Wignall (Ms. Wignall) in 1993, and the couple had three children. The couple's marriage ended in 2006. An Oregon circuit court entered a stipulated general judgment of marital dissolution (judgment).

The judgment required petitioner to pay Ms. Wignall spousal support of $1,900 per month (support provision) from July 2006 through December 2011 (payment term). The support provision did not address whether petitioner had to continue to make payments if Ms. Wignall died before the payment term ended.

---

[2](...continued)
unless otherwise indicated.

[*3]   Petitioner paid $21,000 in spousal support (support payments) in 2008.

Petitioner filed an individual income tax return for 2008 and claimed an alimony

deduction for the support payments.  Respondent issued petitioner a deficiency

notice that disallowed the claimed alimony deduction and determined an accuracy-

related penalty.  Petitioner timely filed a petition challenging respondent's

determinations.

## Discussion

This is another instance where we are required to determine whether the

amount a spouse paid to the former spouse qualifies as alimony.  We must decide

whether the support payments meet the definition of alimony under sections 71

and 215.[3]

We begin with the alimony deduction.  A deduction from gross income is

allowed for alimony payments to the extent such payments are includible in the

gross income of the recipient spouse under section 71.  Sec. 215(a) and (b).

Whether a payment constitutes alimony within the meaning of sections 71(a) and

---

[3]The taxpayer generally bears the burden of proving the Commissioner's determinations are erroneous.  Rule 142(a).  The burden of proof may shift to the Commissioner if the taxpayer satisfies certain conditions.  Sec. 7491(a). Resolution of all factual issues here is based on a preponderance of the evidence. Therefore, we need not consider which party has the burden of proof.  See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

**[\*4]** 215(a) is determined by reference to section 71(b)(1).  A payment that does not meet the definition is deemed a disguised property division, neither taxable to the payee nor deductible by the payor.  Johanson v. Commissioner, 541 F.3d 973, 976-977 (9th Cir. 2008), aff'g T.C. Memo. 2006-105.  The payor must have no liability to continue payments after the payee's death (termination requirement) for a payment to be deductible as alimony.[4]  Sec. 71(b)(1)(D).  We therefore must decide whether petitioner would have been obligated to continue making the support payments after Ms. Wignall's death.

We apply a three-step approach to decide whether a payment satisfies the termination requirement.[5]  See Johanson v. Commissioner, 541 F.3d at 976-977.  The first step is to evaluate whether the divorce decree provides that the payments terminate upon the payee's death.  Id. at 976.  If there is no such provision, then

---

[4]Sec. 71(b)(1) has three other requirements.  First, the payment must be received by a spouse under a divorce or separation instrument.  Sec. 71(b)(1)(A).  Second, the divorce or separation instrument must not designate the payment as not includible in gross income or not allowable as a deduction under sec. 215.  Sec. 71(b)(1)(B).  Third, the payee and the payor must not be members of the same household when the payment is made.  Sec. 71(b)(1)(C).  Respondent concedes that these requirements have been met.

[5]An appeal in this case would lie to the Court of Appeals for the Ninth Circuit absent stipulation to the contrary and, accordingly, we follow the law of that circuit.  See Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

**[*5]** the Court looks to whether the payments would terminate at the payee's death by operation of State law.  Id.  And if State law is ambiguous, the Court will look solely to the divorce decree to determine whether the payments would terminate at the payee's death.  Id.

Petitioner and respondent agree that the judgment did not expressly terminate petitioner's obligation to continue payments if Ms. Wignall died. Accordingly, we look to Oregon law.

We now consider whether a spousal support obligation terminates by operation of Oregon law.  We consider both relevant statutes and common law in deciding this question.  See, e.g., DeLong v. Commissioner, T.C. Memo. 2013-70. The parties agree that Oregon statutes do not address this issue, and we concur. See, e.g., Or. Rev. Stat. sec. 107.105(1)(d) (2011).  Thus, we consider whether Oregon common law establishes that the obligation to pay spousal support terminates upon the death of the payee spouse.

Petitioner argues that this proposition is unambiguously established.  See Prime v. Prime, 139 P.2d 550 (Or. 1943).  The Oregon Supreme Court, in Prime, stated that "[t]he right to receive alimony and the corresponding duty to pay it are generally considered to have terminated on the death of either of the two parties, at least where no statute to the contrary exists, and the judgment or decree is silent on

**[\*6]** the subject." Id. at 557 (citing 27 C.J.S. Divorce p. 999 sec. 240-b).

Petitioner interprets this as a statement of Oregon law.

Respondent, on the other hand, suggests this is a statement of multijurisdictional law and merely dicta. Respondent suggests the court included a statement of multijurisdictional law because the issue decided in Prime, according to respondent, was whether the payee's right to receive alimony survives the payor's death. Respondent further contends that Prime did not decide whether the obligation to pay support terminated upon the payee's death. Thus, respondent contends that Oregon courts have not decided this issue. We disagree with respondent.

On appeal, the legal issue the Oregon Supreme Court addressed in Prime was whether a court may modify the equitable portion of a dissolution agreement that also incorporated contractual elements.[6] Id. at 554, 557. Thus, the issue

---

[6]In Prime v. Prime, 139 P.2d 550, 554 (Or. 1943), former spouses entered into a court-approved dissolution agreement with property settlement and alimony provisions. The spouses had agreed, however, that the payee's right to support survived the payor's death. Id. at 557. Thereafter, the payor husband passed away, and the payee wife sought a declaratory judgment against the former husband's estate. Id. at 553. The estate sought to modify the payment obligation under equitable principles. Id. at 554.

If the support was in the nature of a property settlement, then the agreement could not be modified because it would be governed by contract law. Id. The

(continued...)

**[\*7]** resolved in <u>Prime</u> was not, as respondent suggests, whether the right to alimony terminates upon the payor's death. That principle was already established under Oregon law. The court ultimately held that the equitable component of a decree could be modified and did terminate the obligation under the relevant equitable considerations. <u>Id.</u> at 559. The court, in reaching that conclusion, stated the rule under Oregon law. A complete reading of <u>Prime</u> reveals that the court considered the termination issue to be already resolved with respect to the death of both the payor and the payee.

We conclude that the Oregon Supreme Court has stated Oregon law. Oregon courts have also interpreted <u>Prime</u> as a statement of Oregon law on the issue. <u>See</u> <u>In re Marriage of Quenzer</u>, 599 P.2d 1217, 1221 (Or. Ct. App. 1979); <u>In re Marriage of Carrier</u>, 595 P.2d 827, 829 (Or. Ct. App. 1979); <u>Kemp v. Dep't of Revenue</u>, 1998 WL 477958 (Or. T.C. July 27, 1998). And there is no indication that any Oregon court has adopted a different rule.

---

[6](...continued)
agreement's support provision, however, was in the nature of alimony. The court modified the agreement under equitable principles to relieve the estate of the obligation. <u>Id.</u> at 558. The court in reaching that conclusion noted the obligation to pay would have ended with the husband's passing if the agreement had been silent. This was significant as the agreement called for alimony to survive the payor's death in contrast to the default rule. <u>See id.</u> at 557. In other words, the obligation to pay and the corresponding right to receive alimony terminated upon the death of either spouse under Oregon law. <u>Id.</u>

**[\*8]**  Respondent emphasizes that the Court of Appeals for the Ninth Circuit has indicated that Oregon law is ambiguous on this point.  See Fithian v. United States, 45 Fed. Appx. 700, 701 (9th Cir. 2002).  In Fithian, the Court of Appeals concluded that Oregon common law did not directly establish the termination requirement.  Id.  The Court of Appeals, however, did not select Fithian for publication.  Thus it is an unpublished disposition predating January 1, 2007 and not to be cited as precedent.  See 9th Cir. R. 36-3(a), (c).  Thus, we conclude that Fithian is not controlling, and the issue remains unresolved in the Ninth Circuit.

We therefore hold that the obligation to pay support terminates upon the payee's death under Oregon common law.[7]  Thus, petitioner met the termination requirement under section 71(b)(1)(D).  Petitioner is entitled to deduct the support payments for 2008 as alimony and did not understate his tax.

---

[7]We note that the Oregon tax court noted the tension regarding the termination requirement between decisions by Oregon courts and a decision by the Court of Appeals for the Ninth Circuit.  See Linder v. Dep't of Rev., 18 Or. Tax 11, 15 n.4 (2004) (comparing Kemp with Fithian).  The court in Linder did not analyze the issue, however, and we disagree that the law is ambiguous for the reasons stated.  Further, we are unaware of any other cases (published or unpublished) that conclude the termination requirement is ambiguous under Oregon law.

**[*9]**   Because we reject respondent's disallowance of the alimony deduction for the support payments, there is no underpayment for 2008, and petitioner is therefore not liable for the accuracy-related penalty.

We have considered all the arguments of the parties, and, to the extent we have not addressed them, we find them to be irrelevant, moot or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.