[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14478
Non-Argument Calendar
_____

Agency No. 005704-14

H. MICHAEL MUÑIZ,

Petitioner-Appellant,

versus

COMMISSIONER OF IRS,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
_____

(October 13, 2016)

Before WILLIAM PRYOR, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

H. Michael Muñiz, an attorney proceeding *pro se*[1], appeals the Tax Court's determinations regarding his tax deficiency for the 2011 tax year.  Muñiz raises numerous issues on appeal, but the central dispute is relatively straightforward.  On his 2011 tax return, Muñiz deducted $45,000 from his gross income as alimony paid.  According to Muñiz, this amount was "lump sum" alimony, as defined by Florida state law, ordered in connection with his dissolution proceedings.  The Commissioner of the Internal Revenue Service ("Commissioner") audited Muñiz's tax return and subsequently disallowed the deduction, finding that the payment did not qualify as deductible alimony under federal tax law, *see* 26 U.S.C. § 71(b)(1), because the obligation to make the payment would not terminate upon the death of the recipient spouse under state law.  The Commissioner then sent Muñiz a notice of deficiency stating that he was liable for a $10,952 deficiency in income tax and a $2,190.40 accuracy-related penalty.  Muñiz challenged the deficiency and the penalty in Tax Court, which ruled in favor of the Commissioner.  Muñiz now petitions for review of the Tax Court's decision.  After careful review, we deny the petition and affirm the judgment of the Tax Court.

## I.

We review a decision from the Tax Court in the same manner and to the same extent as a decision from a district court in a non-jury civil action.  26 U.S.C.

---

[1] As a licensed attorney, Muñiz is not accorded the liberal construction we normally give *pro se* litigants.  *See Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

2

§ 7482(a)(1).  We review the Tax Court's legal conclusions *de novo* and its factual findings for clear error.  *Long v. Comm'r*, 772 F.3d 670, 675 (11th Cir. 2014).

The Commissioner's deficiency determination is presumed to be correct, and the taxpayer bears the burden of demonstrating that it is incorrect.  *Webb v. Comm'r*, 872 F.2d 380, 381 (11th Cir. 1989); *see* Tax Ct. R. 142 ("The burden of proof shall be upon the petitioner [challenging the Commissioner's determination].").  Income-tax deductions are matters of legislative grace, and taxpayers must comply with the specific requirements for any deductions claimed.  *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84, 112 S. Ct. 1039, 1043 (1992).  In other words, "the taxpayer must clearly establish his entitlement to a particular deduction."  *Long*, 772 F.3d at 678 (internal quotation marks omitted).

Federal tax law provides that a taxpayer may deduct "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."  26 U.S.C. § 215(a).  Section 71(b)(1) defines the term "alimony or separate maintenance payment" as "any payment in cash" that meets the following four requirements:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

3

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Thus, subsection (D), the only part of § 71(b)'s definition at issue in this appeal, requires that liability to make the alimony payment terminates upon the death of the payee spouse. *See id.* § 71(b)(1)(D). This requirement mainly serves to distinguish support payments from disguised property settlements.[2] *Hoover v. Comm'r*, 102 F.3d 842, 845–46 (6th Cir. 1996) ("The requirement that the obligation to make payments terminate immediately upon the death of the recipient is central to Congress's intended distinction between support and property settlements."); *see also Johanson v. Comm'r*, 541 F.3d 973, 977 (9th Cir. 2008). Only support payments are deductible as alimony under federal tax law.

Formerly, § 71(b)(1)(D) required that the instrument "specifically provide for termination upon the death of the payee spouse," but Congress deleted that requirement through the Tax Reform Act of 1986. *Hoover*, 102 F.3d at 846. So, now, state law can "save" alimony arrangements that do not include an explicit statement of termination upon death. *Id.* Therefore, when conducting the

---

[2] A transfer of property between former spouses is not considered a gain or a loss for either spouse if the transfer is made incident to the divorce. 26 U.S.C. § 1041(a).

4

§ 71(b)(1)(D) inquiry, we first look for termination language in the instrument creating the obligation, but if "the order does not expressly state that the payments cease upon the death of the payee, we must examine the state law to determine whether the death of the recipient terminates the payment order." *Kean v. Comm'r*, 407 F.3d 186, 191 (3d Cir. 2005); *see also Johanson*, 541 F.3d at 977; *Hoover*, 102 F.3d at 846.

In this case, the parties agree that the final judgment creating Muñiz's obligation to pay does not state whether the obligation terminates upon the death of his ex-wife. Therefore, we examine Florida state law to determine whether the death of the recipient spouse terminates the payment order. *Kean*, 407 F.3d at 191.

Under Florida state law, courts may award various forms of alimony and may order "periodic payments or payments in lump sum or both." Fla. Stat. § 61.08(1). Periodic alimony is "most commonly used to provide support," is subject to modification based on a substantial change in circumstances, and, "[a]s a general rule," is "terminated upon the death of either spouse or the remarriage of the receiving spouse." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980). Lump-sum alimony, by contrast, may be awarded "to ensure an equitable distribution of property acquired during the marriage," and, critically, the entry of a final judgment of a lump sum award creates "a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification." *Id.* at

5

1201; *see Newsome v. Newsome*, 456 So. 2d 520, 522 (Fla. Dist. Ct. App. 1984) ("Lump-sum alimony is essentially payment of a definite sum and is in the nature of a final property settlement; hence, an award of lump-sum alimony creates a vested right which survives death and is not terminable on the recipient party's remarriage.") (quoting another source with approval).

Here, assuming, as Muñiz contends, that the final judgment granted an award of lump-sum alimony, the Tax Court properly found that Muñiz was not entitled to the alimony deduction for his lump-sum alimony payment.[3]  Florida state law is clear that liability to pay an award of lump-sum alimony does not terminate upon the death of the payee spouse. *Canarkis*, 382 So. 2d at 1201 (but noting that "[j]urisdiction may be expressly retained, however, to terminate lump sum alimony installment payments upon a spouse's remarriage or death when the parties agree to such a provision in a property settlement agreement).  As a result, lump-sum alimony under Florida law does not satisfy § 71(b)(1)(D), and therefore payment of such an award does not qualify as deductible alimony for federal tax

---

[3] We reject Muñiz's contention that the Commissioner somehow waived its challenge to the lump-sum alimony payment.  The notice of deficiency clearly stated that the payment made pursuant to the alimony award did not qualify as alimony for federal tax purposes because "[f]ederal tax law requires that payments must end with the death of the recipient spouse."  Exh. 27-J.  The Commissioner did not need to plead his basis for disallowing the deduction as an affirmative defense because it was not a matter extraneous to Muñiz's burden of showing that the Commissioner erred in disallowing the deduction.  *See Flav-O-Rich, Inc. v. Rawson Food Serv., Inc.* (*In re Rawson Food Serv., Inc.*), 846 F.2d 1343, 1349 (11th Cir. 1988).

law purposes. *See, e.g.*, *Hoover*, 102 F.3d at 844 ("The mere use of the word 'alimony' does not affect the tax consequences of payments.").

Muñiz argues that § 71(b)(1)(D) does not apply to a one-time lump-sum alimony payment that has been fully satisfied. In Muñiz's view, the plain language of § 71(b)(1)(D) applies in the case of multiple alimony payments only, and whether he would have remained liable after the death of his ex-wife is irrelevant because he quickly discharged his liability under the instrument by paying the full amount. Muñiz misunderstands § 71(b) and the inquiry it requires.

Nothing in the language of § 71(b) makes any of its requirements contingent on whether the "payment in cash" is a one-time payment or one of many installment payments. Deductible alimony is defined as "any payment in cash" that meets the four requirements set forth above, so "any payment in cash" that does not meet those four requirements, including the requirement that "there is no liability to make any such payment for any period after the death of the payee spouse," is not deductible alimony. *See* 26 U.S.C. § 71(b)(1)(D). The lump-sum alimony payment in this case was a "payment in cash," but, under state law, liability to make "such payment" was not contingent on the death of the payee spouse. Therefore, it is not deductible alimony as defined in § 71.

Moreover, Muñiz's proposed distinction between single and multiple payments, solely with respect to lump-sum alimony, would do nothing to advance

7

"Congress's intended distinction between support and property settlements."[4]  *See Hoover*, 102 F.3d at 845–46.  Lump-sum alimony may be made payable in installments, but it is still an award of a definite sum that creates "a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification."  *Canakaris*, 382 So. 2d at 1201.  Whether payable in installments or all at once, an award of lump-sum alimony "is in the nature of a final property settlement."  *Newsome*, 456 So. 2d at 522.  In short, how lump-sum alimony is ordered payable has no bearing on the nature of liability under Florida state law.

Likewise, the fact that Muñiz quickly and fully paid the lump-sum award, and thereby discharged his liability, is irrelevant to whether § 71(b)(1)(D) was satisfied and whether the payment was the kind of payment that Congress intended to be deductible.  The § 71(b)(1)(D) inquiry focuses first on the instrument itself and then, if the instrument is silent, on state law.  *See, e.g.*, *Hoover*, 102 F.3d at 846.  As we have explained, the instrument is silent and Florida state law is clear that, unless the instrument says otherwise, liability to pay an award of lump-sum alimony does not terminate upon the death of the payee spouse.  *Canarkis*, 382 So. 2d at 1201.  Muñiz's actions subsequent to the alimony award are not relevant to the inquiry.

---

[4] While there is, of course, a key distinction between periodic alimony, which necessarily contemplates multiple payments, and lump-sum alimony, which may be made payable all at once or in installments, this case plainly does not involve periodic alimony.

In sum, because liability to pay an award of lump-sum alimony under Florida state law does not terminate upon the death of the recipient spouse, Muñiz's payment pursuant to such an award did not meet the definition of "alimony" under federal tax law, *see* 26 U.S.C. § 71(b)(1)(D), and the Tax Court did not err in sustaining the Commissioner's decision to disallow the claimed alimony deduction.

## II.

Muñiz next challenges the accuracy-related penalty imposed by the Commissioner and sustained by the Tax Court. We review for clear error whether a taxpayer acted with reasonable cause and in good faith when making a tax underpayment. *Gustashaw v. Comm'r*, 696 F.3d 1124, 1134 (11th Cir. 2012).

The Internal Revenue Code imposes a 20-percent penalty for any underpayment that is a "substantial understatement of income tax." 26 U.S.C. § 6662(a), (b)(2). However, the penalty does not apply "if it is shown that there was a reasonable cause for such portion [of the underpayment] and that the taxpayer acted in good faith." *Id.* § 6664(c)(1). The taxpayer bears the burden of proof to establish that he acted with reasonable cause and in good faith. *Gustashaw*, 696 F.3d at 1139.

The most important factor for determining whether the taxpayer acted in good faith is the extent to which the taxpayer attempted to determine his proper

liability.  Treas. Reg. § 1.6664-4(b).  We have concluded that a taxpayer did not establish the reasonable cause and good-faith defense for his tax underpayment where (1) he was a sophisticated taxpayer with an accounting degree and financial-analysis experience; and (2) he did not consult a tax professional before filing his return.  *Campbell v. Comm'r*, 658 F.3d 1255, 1257, 1260 (11th Cir. 2011).

Here, the Tax Court did not clearly err in finding that Muñiz did not act in good faith and with reasonable cause when he underpaid his taxes.  Similar to the taxpayer in *Campbell*, Muñiz was a sophisticated taxpayer who had a Certified Public Accountant license, had practiced as a public accountant, and was a licensed attorney.  In addition, Muñiz admitted that he did not consult a tax attorney or another accountant before filing his 2011 tax return.  Finally, Muñiz could not recall if he had conducted any legal research before filing his return, indicating that he did not take extensive measures to determine his proper tax liability.  Treas. Reg. § 1.6664-4(b).  Muñiz's claimed reliance on the judgment awarding alimony is unavailing because the instrument said nothing about whether liability would terminate on the death of the recipient spouse.  For these reasons, the Tax Court did not clearly err by denying Muñiz's defense to the accuracy-related penalty in the deficiency notice.  Therefore, we affirm the underpayment penalty imposed under 26 U.S.C. § 6662(a).

## III.

Muñiz raises various other issues that he claims were erroneously handled by the Tax Court.  He asserts that the Tax Court abused its discretion in the following ways:  (1) by denying his motion *in limine*, which sought to prevent the introduction of documents the Commissioner had obtained from his ex-wife pursuant to a *subpoena duces tecum* issued without notice to Muñiz; (2) by declining to admit documents from the audit of his 2011 tax return; (3) by sustaining an objection to his cross-examination of his ex-wife during trial before the Tax Court.  Muñiz also challenges the constitutionality of Tax Court Rule of Practice and Procedure 147, which authorized the issuance of the subpoena to his ex-wife, complaining that Rule 147 violated his due-process rights by allowing the issuance of a subpoena to a third-party or non-party without notice to the opposing party.

After careful review of the record and the parties' briefs, we find it unnecessary to address these remaining contentions because any errors were harmless under the circumstances.  As for the evidentiary issues, Muñiz has not shown that any of the evidence allegedly excluded or admitted wrongfully would affect our determination on the question of whether § 71(b)(1)(D) was satisfied in

11

this case, which amounted to a legal question under Florida state law.[5]  Also, Muñiz makes no claim that this evidence was relevant to his ability to establish that he acted reasonably and in good faith.  Accordingly, any evidentiary error was harmless.  *See Pollard v. Comm'r*, 786 F.2d 1063, 1067 (11th Cir. 1986) (evidentiary error by the Tax Court will not result in a reversal if the error was harmless).

Likewise, we conclude that any due-process violation in these circumstances was harmless beyond a reasonable doubt.  *See Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 303–04, 127 S. Ct. 2489, 2497 (2007) (concluding that the consideration of *ex parte* evidence, even assuming that it constituted a due-process violation, was "harmless beyond a reasonable doubt"). While the contents of the documents allegedly obtained improperly may have been referenced by the Tax Court, the documents are not relevant to the question of whether § 71(b)(1)(D) was satisfied in this case, which, as explained above, rested solely on an examination of Florida state law, over which we exercise *de novo* review.  *See Long*, 772 F.3d at 675.  Accordingly, Muñiz was not prejudiced by the admission of the documents obtained through Rule 147.

---

[5] Some of the evidence may have been relevant to Muñiz's waiver argument, but we find that argument to be meritless, and, in any case, Muñiz has not established that any of this pre-deficiency correspondence was inconsistent with the position of the Commissioner in the notice of deficiency.

## IV.

For the foregoing reasons, we **AFFIRM** the decision of the Tax Court and **DENY** Muñiz's petition for review.